Stanley C. WIELGOS, etc., Plaintiff,

v.

COMMONWEALTH EDISON CO., et al., Defendants.

No. 84 C 1222.

United States District Court,
N.D. Illinois, E.D.

Nov. 22, 1988.

A. Denison Weaver, Chicago, Ill., for plaintiff.

Gary M. Elden, Philip C. Stahl, George R. Dougherty, Grippo & Elden, Chicago, Ill., for Com. Edison.

W. Donald McSweeney, Mitchell S. Rieger, Allan Horwich, Frederick J. Sperling, Schiff, Hardin & Waite, Chicago, Ill., for other defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Stanley Wielgos ("Wielgos"), acting on behalf of a class of similarly situated persons, sued Commonwealth Edison Company ("Edison") and several underwriters ("Underwriter Defendants") in this action for violations of Securities Act of 1933 ("1933 Act") § 11 (15 U.S.C. § 77k) ("Section 11"). This Court granted defendants' motion for summary judgment in the "Opinion," 688 F.Supp. 331 (N.D.Ill.1988).

Now Edison has moved for sanctions in the form of attorneys' fees and costs under one or more of Fed.R.Civ.P. 11 ("Rule 11"), 28 U.S.C. § 1927 ("Section 1927") and Section 11(e).[1] For the reasons stated in this

---

**1.** Edison's motion also embraces those items incurred by Underwriter Defendants as well, because Edison either paid their fees and expenses directly or reimbursed Underwriter De-

memorandum opinion and order, Edison's motion is granted in full.

*Background and Procedural History*

On September 22, 1983 Edison filed with the SEC a shelf Registration Statement for 3 million shares of its common stock. On December 5 Edison filed a Prospectus Supplement and offered the shares to the public. Wielgos purchased 500 shares.

On February 7, 1984 Wielgos filed his original complaint. Initially he alleged only that defendants had violated Section 11 by failing to disclose expected delays in the issuance of an operating license for Edison's Byron and Braidwood nuclear power plants.

After taking limited discovery, Wielgos filed a Second Amended Complaint on December 24, 1984.[2] At that point he first advanced a claim sounding in fraud based on Securities Exchange Act of 1934 § 10(b) (15 U.S.C. § 78j(b)) and SEC Rule 10b–5 (17 C.F.R. § 240.10b–5) (together "Section 10(b)"). Extensive discovery followed, and both sides then moved for summary judgment. This Court's then colleague Honorable George Leighton (to whose calendar the case was then assigned) denied Wielgos' motion and requested oral argument on defendants' motion. Before that could take place, Wielgos moved to file yet a *Third* Amended Complaint—one abandoning the Section 10(b) claim and altering the allegations on the Section 11 claim. Over defendants' strenuous objections, Judge Leighton granted leave to file the new pleading.

In the final round of litigation on the merits, all parties moved for summary judgment. In addition to the cross-motions on Wielgos' remaining claim under Section 11, Edison sought victory on its counterclaim—advanced under Rule 11 and Section 1927—demanding fees for having to defend against Wielgos' Section 10(b) claim in the Second Amended Complaint.[3] Although defendants prevailed entirely on the merits of Wielgos' claim, this Court dismissed Edison's counterclaim on purely procedural grounds, without prejudice to its reassertion as a motion for sanctions.

Now Edison advances its prior counterclaim and more. It seeks fees not only for the assertedly groundless Section 10(b) claim but also for the "old" Section 11 allegations—those abandoned by Wielgos in the Third Amended Complaint.[4]

As stated at the outset of this opinion, Edison asserts three separate grounds for recovery fees and costs: Rule 11, Section 1927 and Section 11(e). Though (as will be seen) the standards for liability under those provisions are at worst variants on a single theme, they will be dealt with individually.

*Rule 11*

In material part Rule 11 says that when an attorney files any paper, he or she certifies that "to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Here the parties have focused primarily on the fact-based rather than the law-based part of that inquiry, though the latter aspect does come into play as well.

Wielgos ultimately alleged 14 "nondisclosures" as the bases for both the Section 11

---

fendants for them. In fact, however, Edison has cut back the claim to only a modest percentage of the total fees and expenses incurred by all defendants.

2. As Opinion at 334 n. 6 said with respect to the summary judgment motions with which it dealt:
    Changes made by the intermediate First Amended Complaint are immaterial....
Accordingly this opinion will ignore that pleading as irrelevant to the present motion.

3. It was at the summary judgment motion stage that the case was reassigned to this Court's cal-

endar on Judge Leighton's retirement from the bench.

4. Even though Edison's asserted predicate for recovery is thus broader than just its dismissed Counterclaim, it is narrower than would have been the case by including the Section 11 matters first asserted in the Third Amended Complaint (although the Opinion necessarily dealt with those as well). That narrowing choice has of course made the analytical task here a good deal less complex.

and the Section 10(b) claim. Under Section 11 he charged the failure to disclose those 14 facts in the Registration Statement rendered it false and misleading. Under Section 10(b) he added the allegation that the nondisclosures were done either recklessly or with intent to deceive (the "scienter" requirement).

Rule 11 liability will thus attach on a dual showing:

1. There was no basis for asserting the 14 omitted statements constituted material nondisclosures.

2. Reasonable inquiry would have revealed the lack of any basis.

As already suggested, a loss here for Wielgos on the propriety of his having advanced his Section 11 claim would also spell defeat for him on his Section 10(b) claim (which merely added the separate hurdle of proving scienter). But because of the nature of the arguments Wielgos makes on the current motion, both claims will be looked at.

■ One threshold matter bears mention before this opinion turns to the claims themselves. Wielgos contends he is insulated from liability if *any* of his arguments on the merits meets the relevant standard (whether Rule 11, Section 11(e) or Section 1927). And there has been some suggestion to that effect in the Rule 11 context (*Brown v. Federation of State Medical Boards*, 830 F.2d 1429, 1434 n. 2 (7th Cir. 1987); *FDIC v. Tekfen Construction and Installation Co.*, 847 F.2d 440, 444 n. 6 (7th Cir.1988)).

But those statements have been made in a kind of minimal-added-burden context, and they cannot properly be read as granting a litigant a license to thrust on an opponent substantial added litigation expense in the form of resistance to groundless claims, just because some other colorable claims are also thrown into the pot. *Frantz v. United States Powerlifting Federation*, 836 F.2d 1063, 1067 (7th Cir.1987) (citations omitted) has put the matter in proper perspective:

One [point made by the district court in rejecting Rule 11 liability] is that if a complaint contains any formally correct statement of a legal theory, then the pleader's obligation under Rule 11 has been satisfied. This is incorrect. A claim may be sufficient in form but sanctionable because, for example, counsel failed to conduct a reasonable investigation before filing. And the inclusion of one sufficient (and adequately investigated) claim does not permit counsel to file a stream of unsubstantiated claims as riders.

Each claim takes up the time of the legal system and the opposing side. A single claim in an antitrust case may occasion the expenditure of hundreds or thousands of hours, as opposing counsel try to verify or refute the allegations and theories. Rule 18(a) permits the liberal joinder of claims, but each joined claim, potentially the basis of separate litigation, must have a foundation—the same foundation it would have needed if the claims had been pursued separately.... Rule 11 applies to all statements in papers it covers. Each claim must have sufficient support; each must be investigated and researched before filing.

Accord, such cases as *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir.1988). This Court has consistently adopted (and will continue to follow) just such a "but-for" approach to curb systemic abuses such as that exemplified here (see, e.g., *Brandt v. Schal Associates, Inc.*, 121 F.R.D. 368, 378 (N.D.Ill.1988)). With that in mind, Wielgos' claims may be examined.

*Section 11 Claim*

■ Defendants' summary judgment motion directed to the Second Amended Complaint amply demonstrated *none* of the 14 omitted statements was a material nondisclosure for one or more reasons, nor did their combination approach that level. This Court sees no reason to repeat the detailed exposition in Defendants' Memorandum in Support of Their Motion for Summary Judgment (the one filed before Judge Leighton, addressed to the Second

Amended Complaint).[5]   Instead this opinion will treat Wielgos' claim of fraudulent omissions in summary form.

Six of those "omissions"—those first listed in Second Amended Complaint ¶ 10(a) to (f)—involve findings on Edison's quality assurance programs and compliance with Nuclear Regulatory Commission ("NRC") requirements that came out in the Licensing Board's January 13, 1984 decision (P. Mem. 13–14, D.R. Mem. 8–9).   But the sources on which Wielgos claims to rely for his allegations do not really support the allegations themselves,[6] and to the extent there *was* any truthful content in the six items said to have been omitted, they were adequately disclosed in the Registration Statement (D. SJ Mem. 21).[7]

Though the entire matter requires no further elaboration, Wielgos' first-listed item may be viewed as typical of his assertions.   There he alleged Edison had been cited and fined by NRC for failure to disclose a principal contractor's substandard installation of safety equipment.   But Wielgos' cited source, 19 N.R.C. 36, 116–17 (1984), mentions only *proposed* (rather than actual) fines and does *not* refer to any accepted standards.   Even apart from that, what torpedos Wielgos' argument entirely is that Edison's Form 10–Q for the quarter ended September 30, 1983 had *disclosed* Edison's exposure to such fines (Form 10–Q at 28, quoted at D. SJ Mem. 21).[8] And as SEC rules permit (Opinion at 336 n.

14), that Form 10–Q was incorporated by reference into the Registration Statement at 2.

As for the remaining eight "omissions" on which Wielgos seeks to rely:

1.   Five were copied nearly verbatim from documents incorporated by reference into the Registration Statement (D. SJ Mem. 10–11).   It is surely bizarre for Wielgos to label specifically disclosed facts as "undisclosed."

2.   Two relate to Edison's purported unreasonable failure to disclose expected delays in the completion of the plants and the issuance of the license.   But once again Edison's incorporated filings had repeatedly warned of expected delays (see, e.g., the same Form 10–Q at 29).

3.   Lastly, Edison is said to have engaged in consistent underestimation of the expected completion dates and costs for its nuclear plants.   But for one thing, those underestimations were matters of public record and had been disclosed by Edison over the years (D. SJ Mem. 26–27).   And what concludes the issue is that 1933 Act Rule 175 (as to which Wielgos and his lawyer are charged with knowledge) specifically exempts any "forward-looking statement" or projection from causing liability in the absence of bad faith (Opinion at 337–38).

---

**5.**   That memorandum will be cited "D. SJ Mem." All references to the memoranda on the current motion will take the conventional forms of "D. Mem.," "P. Mem." and "D.R. Mem."

**6.**   It is important to note the context in which Wielgos' compliance with the Rule 11 duty of prefiling inquiry should be evaluated—one very different from the normal situation, in which prefiling means before suit is brought.   Here the Second Amended Complaint was filed 10½ months *after* Wielgos first brought suit.   Fully two months earlier the Licensing Board's decision, on which he places heavy reliance, had been reversed.   More importantly, Wielgos' counsel had had ample opportunity for discovery in the meantime (unlike the situation of a plaintiff forced to rely on his or her own investigation before an initial complaint is filed).   D.R. Mem. Ex. C is the affidavit of Edison Assistant Vice President Louis Del George ("Del George")—whose "specific duties

related to preparation of the case to be presented by Commonwealth Edison before the Atomic Safety and Licensing Board" (*id.*)—negating each of the first six statements advanced by Wielgos.   But Del George—someone readily available for deposition by Wielgos all along—was not deposed until April 30, 1986 (16 months *after* the Second Amended Complaint was filed).

**7.**   Indeed Edison points out that some of the statements (e.g., those regarding past fines) were not even required to be disclosed—that is, they were *immaterial* in the securities-law sense (D. SJ Mem. 20, citing SEC Regulation S–K, Item 102, Instruction 2).   In that respect Edison disclosed *more* than Sections 11 or 10(b) required.

**8.**   That statement did not particularize the problem, but it was certainly not required to do so under the standard of materiality (see n. 7).

Thus Wielgos' last eight "omissions" fare no better than his first six.

In sum, it is clear that Wielgos' allegation that the Registration Statement contained material nondisclosures was not well grounded in fact. That moves the analysis to the second level specified by Rule 11—whether a reasonable inquiry would have revealed that lack of factual support.

That question really answers itself. Surely a "reasonable inquiry" by a lawyer before he or she files a Section 11 claim calls for looking at all parts of the Registration Statement on which that claim rests, including any documents incorporated by reference. As the just-completed discussion shows, all but one of the alleged nondisclosures would have been disclosed upon such a reading,[9] while the other is nonactionable under Rule 175. In that last respect, a reasonable inquiry would have revealed Wielgos' argument was not warranted by existing law.[10]

It follows then that Wielgos' Section 11 claim fails the Rule 11 test. That means Rule 11 sanctions are mandated (*Beeman v. Fiester*, 852 F.2d 206, 208–09 (7th Cir. 1988)).

*Section 10(b) Claim*

Because the identical alleged nondisclosures were an essential ingredient of Wielgos' Section 10(b) claim, which was added to his Second Amended Complaint and then dropped in the Third Amended Complaint, Rule 11 liability automatically attaches to that claim as well. But Wielgos is doubly damned on that claim, which also required proof of Edison's "scienter"—its intent to deceive or reckless failure to disclose (*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)).

Edison has shown Wielgos had no evidence at all of scienter at the time he filed the Second Amended Complaint (D. SJ Mem. 30–35; D. Mem. 7).[11] Wielgos makes

no current effort to dispute that, instead urging:

> 1. a newly-asserted theory that the *way* in which certain facts were disclosed by Edison constituted circumstantial evidence of scienter sufficient to justify bringing the claim;
>
> 2. that he was justified in bringing the Section 10(b) claim and then using discovery to uncover the truth.

■ As for Wielgos' brand-new theory—one never advanced during the summary judgment briefing on the Second Amended Complaint, but tendered for the first time on *this* motion for fees and costs—this opinion need not review its putative merits. *Fred A. Smith Lumber*, 845 F.2d at 752 (citation omitted) teaches:

> We must determine only whether the arguments advanced by counsel were reasonable, and not whether reasonable arguments could have been advanced in support of counsel's position.

Because "the most important purpose of Rule 11 sanctions is to deter frivolous litigation and the abusive practices of attorneys" (*id.*), Edison is entitled to its fees and expenses incurred in defending the sanctionable claims and theories actually advanced by Wielgos, irrespective of whether any post-hoc flights of imagination might produce some more colorable underpinnings.

■ As for Wielgos' second contention, he says his abandonment of the Section 10(b) claim does not admit to frivolousness—indeed his counsel asserts a legitimate right to press the claim in the first place, followed by an ethical duty not to press the claim once supporting evidence could not be unearthed. Relatedly, Wielgos finds it untenable that Edison requests sanctions both for his assertion of the Section 10(b) claim before using discovery *and*

---

9. This is even apart from the knowledge that Wielgos' counsel could have derived via the discovery readily available to him (see, e.g., n. 6).

10. There is no suggestion here of a good faith argument to modify or reverse existing law (see, e.g., *Szabo Food Services, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1081–82 (7th Cir.1987)).

11. Little wonder that Wielgos, faced with a summary judgment and the prospect of attempting to justify the claim in oral argument, beat a hasty retreat—abandoning the charge by filing the Third Amended Complaint.

for his using discovery to determine whether a valid claim existed (and then abandoning the claim when it did not).

Edison's position is entirely consistent with the purpose of Rule 11. Because the Rule mandates a reasonable *prefiling* inquiry, the plaintiff cannot normally launch into litigation on some wishful-thinking basis, hoping that future discovery will divulge the existence of a gun when at the time of filing plaintiff lacks even a plausible indication of any smoke (see *Brandt*, 121 F.R.D. at 374).

But in this instance it is unnecessary to examine the sometimes troublesome question of just how much a plaintiff must know (or suspect) before bringing a defendant into court in the first place. As already pointed out, Wielgos was in the unusual position of having had 10½ post-filing months available for discovery *before* he filed his Section 10(b) claim in the Second Amended Complaint. Having failed to uncover any evidence of scienter in that time, he nevertheless filed the claim hoping that something might turn up later.

Though to be sure "[t]he abandonment of a claim does not show it is frivolous" (*Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1372 (7th Cir. 1985)), that does not prove the converse: that the abandonment of a frivolous claim renders it nonfrivolous. Wielgos had "to have enough evidence to justify a reasonable attorney in concluding the complaint [was] warranted" (*Brandt*, 121 F.R.D. at 374) *when the Second Amended Complaint was filed.* He did not.

\*　　\*　　\*

Both the "old" Section 11 claim and the abandoned Section 10(b) claim thus trigger Rule 11 sanctions—the first on one ground, the second on two. That might perhaps

obviate any need for a full analysis of Edison's other grounds for imposing liability, but at least a brief discussion is in order.[12]

### Section 1927

■ *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir.1987) teaches a Section 1927 violation occurs when an attorney "intentionally file[s] a claim that lacks a plausible legal or factual basis." At one point our Court of Appeals had limited the statute's reach to subjective bad-faith filing, but at least since *In re TCI, Ltd.*, 769 F.2d 441, 445 (7th Cir.1985) its identity of purpose with Rule 11 (see *Fred A. Smith Lumber*, 845 F.2d at 752) has led to use of the same objective bad-faith standard.

In this instance it has been amply demonstrated that Wielgos' "old" Section 11 and abandoned Section 10(b) claims lacked any plausible legal or factual basis. Hence Wielgos and his counsel have failed to meet the objective standard, and the imposition of liability under Section 1927 as well as under Rule 11 is appropriate.

### Section 11(e)

■ As a final predicate for liability, Section 11(e) permits a prevailing party to recover costs and attorney's fees if the underlying Section 11 claim was "frivolous" or "bordering on frivolous" (*Western Federal Corp. v. Erickson*, 739 F.2d 1439 (9th Cir.1984)). On that score Wielgos seeks to find shelter in *Aid Auto Stores, Inc. v. Cannon*, 525 F.2d 468, 471 (2d Cir. 1975) (per curiam):

Mere failure of a party to present sufficient evidence to support its claims will not in itself warrant a determination of frivolity.[13]

---

12. For example, though Rule 11 violations must always result in sanctions (the Rule says the court "shall impose ... an appropriate sanction"), those sanctions do not necessarily call for total fee-shifting in every case in which a violation is proved. Section 11(e), on the other hand, is a specific fee-shifting statute, while Section 1927 speaks of incremental expenses (including attorneys' fees) but is stated in discretionary (the offending attorney "may be required") rather than mandatory terms.

13. [Footnote by this Court] Among lexicographers the great debate triggered by Webster's Third New International Dictionary (1976) was whether its adoption of a reportorial rather than judgmental approach (that is, what word usage had come to be, not what it "ought" to be) reflected the proper function of a comprehensive dictionary. In any event, no distinction seems to be made in that volume between "frivolity" and "frivolousness." But at least in the sense relevant here—whether a claim is legally

Even on that premise, it is nonetheless clear that the *total lack* of evidence to support a claim *does* render it frivolous.[14] In any event, *Aid Auto* has not prevented the imposition of Section 11(e) liability in circumstances startlingly similar to those presented here. *Rubin v. Long Island Lighting Co.*, 576 F.Supp. 608, 615–16 (E.D.N.Y.1984) dealt with a plaintiff who had brought a meritless claim and then redrafted it in the face of a compelling motion to dismiss, adding an additional baseless claim. Quoting the standard in *Aid Auto*, the court did not hesitate to find the action "frivolous."

Wielgos' course of action in this litigation was either "frivolous" or at a minimum "border[ed] on frivolous": All the allegations of his Section 11 claim, abandoned or not, were without merit. That provides an independent basis for Edison's entitlement to attorney's fees incurred in defending the Section 11 claim.

### Amount and Allocation of Fees and Expenses

■ Edison is entitled to recover defendants' reasonable attorneys' fees and expenses under each of Rule 11,[15] Section 1927 and Section 11(e). Edison's Ex. F sets out actual expenditures approaching $400,-000 before the Third Amended Complaint was filed. However, Edison has reduced its requesst to $159,035 (D. Mem. 9) plus its fees and expenses in conjunction with the fees motion itself (*id.* 12 n. 11) and plus expenses unrecovered via Edison's Bill of Costs (D.R. Mem. 13 n. 7).

Wielgos has not responded as to the amount of fees or as to where the burden should be placed as between himself and his lawyer. On the former issue, Edison's request appears totally reasonable. And on the latter, *Rubin*, 576 F.Supp. at 616 n. 12 expresses the pragmatic notion that the fact "that this suit was brought as a class action is indicative of counsel's role in instituting this suit." Accordingly the total award will be the amount stated in the preceding paragraph, and liability will be imposed jointly and severally upon Wielgos and his counsel.

### Conclusion

At the outset Edison doubtless presented an inviting target to Wielgos' lawyer: It was the archetypical deep-pocket defendant that had been the subject of an adverse event not expressly presaged in a recent prospectus, with an abrupt decline in market price of the stock following hard on the heels of that event. That meant no scienter had to be shown to impose liability (because Section 11 was available as a predicate for bringing suit), with an enormous potential recovery undiminished by the market's later rebound, and with a corresponding potential for huge lawyers' fees for the class-action counsel.

Under those circumstances it might be understandable for counsel to rush into court, whether or not an angel might have feared to tread there (and whether or not rushing in might be labeled a fool's errand). But that is not the premise on which Edison seeks recovery here. What is at stake on the current motion are rather the burdens thrust on Edison beginning almost a year later, when there had been more than enough time for the dust to settle, for the facts to sort themselves out and for the glitter of easy dollars to cease

---

"frivolous"—the latter word rather than the former (which seems to connote frolicking rather than logical absurdity) appears to this Court to convey the right message.

**14.** *Aid Auto* is not helpful in those terms, for the court there found there *was* enough evidence to show good cause to institute the lawsuit (*id.*).

**15.** As already indicated, Rule 11's mandate of an "appropriate sanction, which may include an

order to pay to the other party ... the amount of the reasonable expenses incurred because of the filing ..., including a reasonable attorney's fee," does not necessarily call for fee-shifting in every case. Here Wielgos has offered nothing to suggest the inappropriateness of that sanction, despite the substantiality of the amount involved. In any event, both Section 1927 and Section 11(e) make attorneys' fees and expenses the measure once sanctions are found in order.

its dazzling impact on a lawyer's required objective vision. Even if Wielgos' counsel were credited with having had a reasonable suspicion to support filing suit in the first place,[16] there was nothing to prevent an informed (and responsible) later decision not to pursue the action when the facts failed to justify that initial suspicion.

In those terms Edison's approach and its current prayer for relief are both measured and moderate. Liability is clear and nothing suggests the amount—though very substantial—is unreasonable. Edison's conduct was reactive rather than active, and the price tag was imposed by Wielgos' and his lawyer's own course of conduct. They are jointly and severally ordered to pay Edison the sum of $159,035, plus Edison's fees and expenses in conjunction with the fees motion and plus the unrecovered portion of the expenses sought in its Bill of Costs.

This action is set for a status hearing at 9 a.m. December 9, 1988. Not later than November 30 Edison shall have delivered to Wielgos' counsel and filed in this Court's chambers a statement quantifying the last two components of the total award. At the time of the status hearing Wielgos' counsel should come prepared to discuss the arrangements and the timing for payment of the award.

---

**16.** This does not suggest such a "reasonable suspicion" is an appropriate standard for the avoidance of Rule 11 exposure—it is merely a rhetorical lead-in to explain why the conduct here was sanctionable even under the most generous assumption.