John A. HEALEY, Plaintiff,

v.

CHELSEA RESOURCES LTD., Dominick & Dominick Securities, Inc., and Dominick & Dominick, Incorporated, Defendants.

No. 88 Civ. 6957 (RLC).

United States District Court, S.D. New York.

Dec. 10, 1990.

Shereff, Friedman, Hoffman & Goodman, New York City (Robert J. Jossen, of counsel), for plaintiff.

Cadwalader, Wickersham & Taft, New York City (Richard J. Wiener, Gregory M. Petrick, of counsel), for defendants Dominick & Dominick Securities, Inc. and Dominick & Dominick, Inc.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Jay Topkis, Gerard E. Harper, Gidon M. Caine, of counsel), for Michael S. Press.

## OPINION

ROBERT L. CARTER, District Judge.

The underlying facts of this case are set forth in the court's opinion of August 31, 1990, with which familiarity is assumed. *Healey v. Chelsea Resources Ltd.*, 132 F.R.D. 346 (S.D.N.Y.1990) (Carter, J.).

Michael S. Press, plaintiff's attorney at trial, has moved through his own attorney for enlargement of the record and reargument of the court's decision to impose sanctions against him under Rule 11, F.R.Civ.P, and under § 11(e) of the Securities Act of 1933. 15 U.S.C. § 77k(e) (last sentence). Plaintiff John A. Healey has moved separately for reargument of the decision to impose Rule 11 and § 11(e) sanctions against him. Defendants Dominick & Dominick Securities, Inc. ("Dominick Canada") and Dominick & Dominick, Incorporated ("Dominick U.S.") (collectively "Dominick") have opposed the motions for reargument.[1]

Pursuant to the court's August 31 opinion, Richard J. Wiener of Cadwalader, Wickersham & Taft ("Cadwalader"), attorneys for Dominick, has also filed an affidavit (cited as "Wiener Aff.") verifying fees and expenses claimed by Dominick for this action. After Healey and Press filed memoranda in opposition to that affidavit, Wiener filed a so-called reply affidavit (cited as "Reply Aff.") supplying additional information.

## I. MOTIONS FOR REARGUMENT

■ A motion to reargue is not simply an opportunity for counsel to be more persuasive. *Bozsi Ltd. Partnership v. Lynott*, 676 F.Supp. 505, 509 (S.D.N.Y.1987) (Carter, J.). Rather, "[t]he only proper ground on which a party may move to reargue an unambiguous order is that the court has overlooked 'matters or control-

ling decisions' which, had they been considered, might reasonably have altered the result reached by the court." *Adams v. United States*, 686 F.Supp. 417, 418 (S.D.N.Y.1988) (Carter, J.) (quoting *Bozsi, supra*, 676 F.Supp. at 509). A belief that the court erred in its findings of fact or conclusions of law is not, by itself, sufficient ground for counsel to move for reargument. *See Chambless v. Masters, Mates & Pilots Pension Plan*, 697 F.Supp. 642, 644 (S.D.N.Y.1988) (Carter, J.), *aff'd*, 885 F.2d 1053 (2d Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990).

■ In accordance with this principle, the local rules of this district forbid the parties from submitting affidavits on a motion to reargue. Rule 3(j), Local Civil Rules, S. & E.D.N.Y. A party cannot avoid this limitation, as Press has attempted to do, merely by joining the motion to reargue with a motion to "enlarge the record," and submitting affidavits therewith. Hence, the court may not grant the motions to reargue unless it is apparent, without regard to the affidavits submitted by Press, that the court has overlooked matters or controlling decisions that might affect the outcome.

### A. Healey's Motion for Reargument

Healey alleges that he is entitled to reargument because of a conflict of interest between himself and Press, who initially represented him in his opposition to the fees motion. The court abides by its earlier determination that there was no substantial conflict between Healey and Press. *Healey, supra*, 132 F.R.D. at 353. It was "altogether clear that this case [was] frivolous," but Press adopted Healey's story as his own, and continued to advance Healey's case, although he must have acted as counsel in this case "with full knowledge that it had no merit." *Id.* Hence, if Healey was liable for attorneys' fees, then so was Press. Their interests were the same.

---

**1.** Defendant Chelsea Resources, Ltd., has made no further appearance since its counsel with- drew with leave of the court for nonpayment of fees on May 2, 1990.

■ Even assuming for the sake of argument that there was an actual conflict of interest, the court is convinced that allowing Healey to retain independent counsel could not reasonably have altered the result. Any conflict of interest could not have prejudiced Healey because it is clear from the facts apparent at trial and from the court's own observation of Healey's testimony, independent of the arguments of counsel, that the case was frivolous and that Healey brought the action in bad faith.

### B. Press's Motion for Reargument

Much of Press's argument, intended to show that after reasonable inquiry he was ignorant of the frivolous nature of his client's claims, must be disregarded because it relies on affidavits improperly submitted with the motion or on facts that have been fully considered by the court. *See* Press Mem. re Motion for Rearg. 22–45. The court need detain itself with only three issues: (1) whether the court's denial of Dominick's motion for summary judgment, *Healey v. Chelsea Resources, Ltd.,* 736 F.Supp. 488 (S.D.N.Y.1990) (Carter, J.), establishes that Healey's claim was not frivolous or that Press could not reasonably have known of its meritlessness, (2) whether the court erred in considering the sanctions motion together with the merits of the case, and (3) whether the sanctions against Press are authorized by law.

■ The court's denial of summary judgment in no way establishes that this suit had any basis in fact. On the summary judgment motion, the court had before it only those facts and allegations that the parties chose to present in their affidavits. The court's denial of the motion does not undercut the court's conclusion that facts in Press's possession, which first became apparent to the court at trial, made clear that the suit had no reasonable factual basis. *See Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1472–73 (2d Cir.1988) (denial of defendants' motions for summary judgment does not shield plaintiff's attorney from Rule 11 sanctions), *rev'd in part on other grounds sub nom. Pavelic & Leflore v. Marvel Entertainment Group,* —— U.S. ——, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989).

Next, Press urges that it was unfair for the court to consider the merits and the sanctions motion together, because it created a conflict of interest between him and Healey, his client. He argues that he sacrificed his own interests for Healey's, and that he therefore was unable to introduce evidence that would have exonerated him from liability for sanctions.

■ Representation free from conflicts of interest is the attorney's duty and the client's right, and so the potential existence or non-existence of any conflict of interest must be determined in view of any potential prejudice to the client. *See, e.g., Oneida of Thames Band v. New York,* 757 F.2d 19, 22 (2d Cir.), *cert. denied,* 474 U.S. 823, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985). As discussed above in connection with Healey's motion for reargument, the court does not believe that there was an actual conflict of interest between Press and Healey.

■ Even if Press is correct that a conflict existed, he failed to avail himself of the opportunities that he had to protect both his own interests and those of his client. Press should have fully disclosed any conflict to Healey and advised him to seek independent representation. *See Calloway, supra,* 854 F.2d at 1471; *Eastway Constr. Corp. v. City of New York,* 637 F.Supp. 558, 570 (E.D.N.Y.1986), *modified,* 821 F.2d 121 (2d Cir.), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); 5A C. Wright & A. Miller, *Federal Practice & Procedure* § 1336 at 108 (2d ed. 1990); *cf. People v. Gomberg,* 38 N.Y.2d 307, 314, 342 N.E.2d 550, 554, 379 N.Y.S.2d 769, 775 (1975). Once Healey had secured independent representation or had waived the conflict, Press could have retained his own counsel to argue the matter on his behalf. *Cf. Calloway, supra,* 854 F.2d at 1471.

It is true that Press's law firm, by letter to the court dated June 26, 1990, requested that the sanctions motion be considered after the decision on the merits, but the letter in no way suggested the existence of

a conflict of interest. Rather, it was Dominick, in its reply brief on the sanctions motion, that first raised the suggestion of a possible conflict of interest between Healey and Press. Dominick Reply Mem. re Motion for Reimbursement of Costs 5–6. Nothing in the submissions by either party suggested that disclosure of facts known to Press might advance his personal interests but harm the interests of his client.

■ Press argues that his duty to protect client confidences required him to proceed as he did. *See* N.Y.Code of Professional Responsibility DR 7–102(B)(1) (McKinney Supp.1990). Perhaps Press believed that calling the possible conflict of interest to the attention of the court would be prejudicial to Healey. This tactical consideration in no way explains Press's failure to inform Healey of the alleged conflict. Raising the issue of conflict of interest after the fact, instead of being forthright about it at the time it arose, only heightens the appearance of impropriety. *See Greene v. Greene,* 47 N.Y.2d 447, 451, 391 N.E.2d 1355, 1357, 418 N.Y.S.2d 379, 381 (1979) (counsel has duty to avoid appearance of conflict); *Death v. Salem,* 111 A.D.2d 778, 490 N.Y.S.2d 526, 528 (1985) (same). Press filed briefs pertaining to the sanctions motion on Healey's behalf as if no conflict existed between himself and Healey, in effect denying the conflict by his silence. He cannot now claim that a conflict of interest deprived him of a fair opportunity to protect his own interests.

Additionally, Press suggests that there is no legal basis for sanctions against him. He argues that he did not improperly "sign" a paper that would make him liable

under Rule 11, and that § 11(e) does not authorize sanctions against counsel.

Press's contention that he did not sign any paper in violation of Rule 11 is incorrect.[2] At the conclusion of discovery, when Press should have known the facts of the case, he signed a proposed joint pretrial order, effectively representing that the case presented issues for trial. Moreover, at the conclusion of the trial, he filed a post-trial brief advancing the arguments that the court has found to be frivolous.

Press's argument that § 11(e) of the Securities Act does not authorize sanctions against counsel is somewhat more plausible, but it is also incorrect. Under § 11(e),

> the court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attorney's fees, and if judgment shall be rendered against a party litigant, upon the motion of the other party litigant, such costs may be assessed in favor of such party litigant (whether or not such undertaking has been required) if the court believes the suit or the defense to have been without merit, in an amount sufficient to reimburse him for the reasonable expenses incurred by him, in connection with such suit, such costs to be taxed in the manner usually provided for taxing of costs in the court in which the suit was heard.

15 U.S.C. § 77k(e). A suit is "without merit" under § 11(e) if it "borders on the frivolous or has been brought in bad faith." *Healey, supra,* 132 F.R.D. at 352. Press argues that the language in § 11(e) allows an assessment of fees only against the losing party and not against his attorney.

---

**2.** Rule 11 provides, in pertinent part:

The signature of an attorney [on a pleading, motion, or other paper] ... constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or need-

less increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Rule 11, F.R.Civ.P.

Nothing in the language of § 11(e) expressly limits the fee awards to the parties. Press argues, however, that § 11(e) is analogous to 42 U.S.C. § 1988, which does not authorize the imposition of attorneys' fees on plaintiff's counsel in civil rights cases. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 761 & n. 9, 100 S.Ct. 2455, 2461 & n. 9, 65 L.Ed.2d 488 (1980) (dictum); *Eastway Constr. Corp. v. City of New York,* 821 F.2d 121, 124 (2d Cir.1987) (dictum); *cf. Kentucky v. Graham,* 473 U.S. 159, 163–65, 105 S.Ct. 3099, 3103–3105, 87 L.Ed.2d 114 (1985) (in action against state officials in their personal capacity, § 1988 authorizes fee award for plaintiff only against defendants who lost on the merits).[3]

■ Contrary to Press's contention, § 11(e) is not analogous to § 1988 for this purpose. Like Rule 11, and unlike § 1988, § 11(e) specifically provides for sanctions for the purpose of deterring meritless securities litigation. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 210–11 n. 30, 96 S.Ct. 1375, 1389 n. 30, 47 L.Ed.2d 668 (1976). By contrast, although the groundlessness of a suit is ordinarily a prerequisite to awarding fees to a defendant under § 1988, that section provides a general discretionary fee-shifting mechanism. *See Cooter & Gell v. Hartmarx Corp.,* — U.S. ——, 110 S.Ct. 2447, 2462, 110 L.Ed.2d 359 (1990) (distinguishing fee-shifting statutes from deterrent sanctions). The deterrent purpose of § 11(e), as well as the interest of fairness, is best served by imposing sanctions on the attorney when it is the attorney who is responsible for pursuing meritless litigation. *Cf. United States v. Potamkin Cadillac Co.,* 689 F.2d 379, 382 (2d Cir.1982) (whether attorney or client

caused frivolous appeal determines who should bear costs).

For this reason, § 11(e) is more nearly analogous to other provisions specifically designed to assess sanctions for vexatious litigation than to § 1988. Accordingly, courts have awarded attorneys' fees under § 11(e) against attorneys responsible for bringing meritless claims. *See Wielgos v. Commonwealth Edison Co.,* 123 F.R.D. 299, 306 (N.D.Ill.1988); *Rubin v. Long Island Lighting Co.,* 576 F.Supp. 608, 616 & n. 12 (E.D.N.Y.1984). Although § 11(e) states that the fees are to be taxed as "costs," and costs are ordinarily assessed against the losing party, language providing for "costs" for meritless litigation has been construed to allow the court to assess sanctions against an attorney responsible for maintaining the litigation.[4] For example, Rule 38, F.R.App.P., merely provides that a court of appeals "may award just damages and single or double costs to the appellee" for a frivolous appeal, but it has been construed to authorize an award of costs not only against the losing party but also against the losing party's attorney. *See Bartel Dental Books Co. v. Schultz,* 786 F.2d 486, 491 (2d Cir.1986). Similarly, Rule 41(d), F.R.Civ.P., which simply specifies that "the court may make such order for the payment of costs ... as it may deem proper," has been used to award costs against an attorney responsible for voluntarily dismissing and then reinstituting an action for his own convenience. *See Whitehead v. Miller Brewing Co.,* 126 F.R.D. 581, 582–83 (M.D.Ga.1989).

■ At any rate, the court has the inherent equitable power to award counsel fees against an attorney who continues an action in bad faith. *Roadway Express, su-*

---

**3.** Even in the context of § 1988, an award of attorneys' fees as costs is not in all circumstances restricted to the named parties, inasmuch as a court may require a state to pay costs and fees under § 1988 although it is not a proper party to the action. *Hutto v. Finney,* 437 U.S. 678, 699–700, 98 S.Ct. 2565, 2578–2579, 57 L.Ed.2d 522 (1978); *see also Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (suit against a state official is not against the state); *cf., e.g., Owens v. Tiber Island Condo. Ass'n,* 373 A.2d 890 (D.C.1977) (liability for costs

not restricted to parties of record); *Schor v. Becker,* 437 Pa. 409, 263 A.2d 324 (1970) (same).

**4.** Although costs are ordinarily taxed against the losing party, the decision to tax costs remains in the equitable discretion of the court. *See* Rule 54(d), F.R.Civ.P. The language in § 11(e) that the attorneys' fees are to be assessed "in the manner usually provided for taxing of costs" is not intended to restrict the court's discretion, but merely clarifies the administrative mechanism by which the fees are to be collected.

*pra,* 447 U.S. at 766, 100 S.Ct. at 2464; *Humphrey v. Columbia Records,* 124 F.R.D. 564, 566–67 (S.D.N.Y.1989) (Carter, J.); *Nemeroff v. Abelson,* 94 F.R.D. 136, 145 (S.D.N.Y.1982) (Carter, J.), *aff'd,* 704 F.2d 652 (2d Cir.1983). The court has found that Press "continued to act as counsel in this case with full knowledge that it had no merit"—that is, in bad faith. *Healey, supra,* 132 F.R.D. at 353. Accordingly, even if Press were correct in his argument that Rule 11 and § 11(e) do not apply to him, the result would be the same.

## II. AMOUNT OF SANCTIONS

Dominick has requested attorneys' fees in the amount of $300,507.17 and other costs of $42,713.35. With one exception, Press and Healey do not challenge the hourly rates of Dominick's attorneys, but they argue that the case was overstaffed and that an excessive amount of time was spent in conducting the litigation. They also argue that various considerations support awarding less than full costs and fees.

 Healey and Press challenge the $196.00 hourly fee charged for 7.31 hours of work by the office of the Managing Attorney of Cadwalader, based on information in Wiener's first affidavit that the fees of that office were for "serving and filing papers and managing the docket." Wiener Aff. ¶ 23. Wiener subsequently explained that the fee was for legal services by Poppy Quattlebaum, Cadwalader's Managing Attorney, who "was consulted on this matter from time to time ... on procedural issues that fall within her area of expertise." Reply Aff. ¶ 21. Despite this sworn statement, however, every time-sheet entry for Quattlebaum's work describes the work as "Docket entry(s)." *Id.* exh. A *passim.* As documentation for legal services consisting of consultation on procedural issues, these billing entries fail to comport with this circuit's rule that attorney's fees submissions must be accompanied by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d

Cir.1983). To be sure, the court must "look[ ] at the big picture to see if the total time expended for each portion of the case was reasonable," rather than "look[ ] at each individual entry ... in an attempt to determine if each one is itself reasonable." *Burr v. Sobol,* 748 F.Supp. 97, 100 (S.D.N.Y.1990) (Carter, J.); *see also United States Football League v. National Football League,* 704 F.Supp. 474, 477 (S.D.N.Y.) (Leisure, J.), *aff'd,* 887 F.2d 408 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990). However, when individual entries not only grossly fail to meet the minimum standards for documentation but also are inconsistent with the text of the affidavit to which they are annexed, and the party submitting them offers no explanation for the discrepancy, the court is justified in denying the fees represented by those entries. Accordingly, the 7.31 hours billed for Quattlebaum's services at $196.00 per hour, for a total amount of $1,432.76, are disallowed.

 Healey and Press do not object to the hourly rates of other attorneys at Cadwalader, but the court notes that the evidence of the reasonableness of Cadwalader's hourly rates falls far short of the "ideal" evidence of the "prevailing market rate." *Chambless v. Masters, Mates & Pilots Pension Plan,* No. 80 Civ. 4258 (RLC), slip op. at 21 (S.D.N.Y. July 20, 1988) (1988 WL 80170, 1988 U.S. Dist. LEXIS 7486) (Carter, J.), *aff'd in part on this issue and rev'd in part on other grounds,* 885 F.2d 1053, 1059 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990). Such evidence

> should include affidavits from attorneys with similar qualifications stating the precise fees they have received for comparable work or stating the affiant's personal knowledge of specific rates charged by other lawyers for similar litigation, data about fees awarded in analogous cases, evidence of the fee applicant's rates during the relevant time period, and evidence submitted by other fee applicants in like cases.

*Id.* at 21–22. Indeed, Wiener's affidavits do not even contain specific information

about the experience and background of the attorneys involved in the case. Nonetheless, the fact that the requested hourly rates are the rates customarily charged by Cadwalader, Wiener Aff. ¶ 3, supplemented by the court's knowledge and expertise regarding attorneys' fees in the New York City area, is sufficient to establish that Cadwalader's hourly rates are in line with the prevailing market rates for attorneys of comparable background and experience. *See National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1325 (D.C.Cir.1982) (per curiam); *Chambless, supra,* slip op. at 22; *Soler v. G & U, Inc.,* 658 F.Supp. 1093, 1101 (S.D.N.Y.1987) (Tenney, J.).

Although Healey and Press object to the fees charged by Cadwalader for support services on the grounds that Cadwalader has not documented that the fees are comparable to those charged by independent vendors, the court has examined those charges and finds them to be reasonable.

Press and Healey argue that Dominick's unsuccessful resistance to Healey's efforts to depose Robert C. Wong was sufficiently meritless to warrant denial of fees and expenses associated with that matter. *See Healey v. Chelsea Resources, Ltd.,* No. 88 Civ. 6957 (RLC) (S.D.N.Y. May 12, 1989) (Endorsement) (Carter, J.) (finding Dominick's objection to be "without merit"); *Chambless, supra,* 697 F.Supp. at 648-49 (denying fees attributable to baseless motion). Awards of expenses and attorneys' fees should include only those fees and expenses that were reasonably incurred. Dominick had opposed Healey's motion to issue letters rogatory to depose Wong, a citizen and resident of Canada, on the grounds of irrelevancy and burdensomeness.

Since Wong was the author of a report that was itself discoverable, his testimony

could obviously be expected to supplement the information contained in the report and shed light on its origins and reliability. Hence, Dominick's opposition was patently frivolous insofar as Dominick maintained that the deposition was irrelevant for purposes of discovery—that is, not "reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1), F.R. Civ.P.

Dominick's opposition also rested on an alternative ground, namely that "the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." *Id.* Dominick's attorneys assert that they believed that the importance of Wong's deposition testimony was outweighed by the expense of traveling to Canada to take the deposition. Reply Aff. ¶ 18. This explanation, however, is belied by the expense of pursuing the opposition to the letters rogatory as compared to the potential cost of the depositions. Cadwalader's fees related to the opposition to the letters rogatory,[5] not counting expenses for Canadian counsel and expenses other than attorney time, come to $3,153.72. *See* Appendix I. Wiener made other trips to Toronto in connection with other depositions and meetings. Under these circumstances, the additional burden incurred because of Wong's deposition, though not insignificant, is hardly beyond the scope of discovery in a case of this kind. Accordingly, the court believes that Dominick's opposition to the Wong deposition was not only mistaken but unreasonable, and the fees and expenses attributable to that opposition should be deducted from the award.

The claim of $3,841.80 charged by Fogler Rubinoff, Dominick's Canadian counsel, is

**5.** It is difficult to determine precisely the amount of fees attributable to the opposition to the Wong deposition, because matters relating to that opposition are occasionally combined in the same item with other matters on the time sheet. Dominick has provided the court with no information on which to base an estimate of the amount of time allocated to the different activities. Since Dominick has the burden of establishing by adequate records its expenses and attorneys' fees, ambiguities are to be construed against it when the court has no basis for making a reasonable estimate. Accordingly, these amounts are attributed in their entirety to the opposition to the Wong deposition.

458

related to contesting the letters rogatory regarding Wong, Wiener Aff. ¶ 9, and is unaccompanied by contemporaneous time records. Hence, it must be disallowed.

Dominick's motion for summary judgment, though unsuccessful, was not frivolous or unreasonable. Press's contention that Dominick is not entitled to fees and expenses in connection with that motion is rejected.

■ Press and Healey also object that Wiener's first affidavit does not include contemporaneous time records as required by the law of this circuit. *See New York State Ass'n for Retarded Children, supra,* 711 F.2d at 1148. Wiener's reply affidavit, however, supplies the missing material.[6] In a letter to the court dated October 17, 1990, Healey's counsel argues that "[b]y choosing to submit these records on reply, the Dominick defendants have effectively denied Healey an opportunity to analyse [*sic*] and respond to their contents," and that the fee request should be reduced accordingly. The court disagrees. Healey and Press could have petitioned the court for time to file objections to the additional material contained in the reply affidavit, and perhaps they would have been entitled to a set-off against the fee award for any additional expenses incurred in doing so. *See Lewis v. Coughlin,* 801 F.2d 570, 577 (2d Cir.1986). However, nearly two months have passed since the reply affidavit was filed and they· have made no attempt to supplement their responses. The court must therefore conclude that Healey and Press have no specific objections to the new material, and that their objections to Wiener's initial failure to file contemporaneous time records are purely technical. Although the court would have preferred that Wiener had filed the contemporaneous time records with the initial affidavit, that defect has been cured by the filing of the reply affidavit.

Healey argues that the presence of both a senior partner, Richard J. Wiener, and an associate at the trial and at some of the depositions was unreasonable. Press also argues that the fact that Wiener handled most of the discovery matters, instead of delegating responsibility to a more junior member of the firm, was unreasonable.

■ It is common and accepted practice to have an associate "second seating" a major trial to assist the partner who is principally responsible for the litigation. *See Burr, supra,* 748 F.Supp. at 101. The court cannot say that this practice was unreasonable in this case. Trials are an expensive undertaking. Press and Healey surely must have realized this at the time they chose to proceed to trial.

■ With regard to the depositions and other discovery matters, the question is more difficult. *See Kronfeld v. Transworld Airlines, Inc.,* 129 F.R.D. 598, 604 (S.D.N.Y.1990) (Wood, J.). Dominick had specifically requested that Wiener take primary responsibility for the depositions, Reply Aff. ¶ 8, and so his presence was not an attempt by Cadwalader to inflate its fees. Dominick was by no means obligated to retain the least expensive competent counsel available to it. However, the amount of time spent by Wiener, a relatively senior partner at Cadwalader, billed at his regular rates, was unreasonable for the purpose of court-awarded legal fees. Although a highly experienced attorney is not forbidden from taking on simple matters and receiving a fee for them, the proper billing rate for those services is the rate appropriate to a less experienced attorney. *See Burr, supra,* 748 F.Supp. at 100, 102. Accordingly, those fees that appear from the billing sheets to be attributable to work by Wiener on discovery matters should be reduced.

The court does not mean to suggest that it is inappropriate for a senior attorney charging his normal rate to involve himself in any discovery matters at all. Rather, the fee adjustment must take into account (1) the fact that certain discovery matters may have been appropriate for Wiener's attention at his ordinary billing rate, and (2) the fact that a number of matters that

6. Although the time records accompanying the reply affidavit were redacted to protect client confidences, Wiener also filed an unredacted, sworn copy of the time records *in camera.*

could have been handled by a single attorney unnecessarily involved both Wiener and a more junior attorney, as well as (3) the rate ordinarily charged for work done by Wiener that would ordinarily be done by more junior attorneys. Based on these considerations, Wiener's fees regarding matters in the discovery phase of the case [7] are reduced to $150.00 per hour. *See* Appendix II.

 The court has examined the time records submitted by Wiener to determine whether the expenses claimed therein are excessive. Although an examination of the billing sheets otherwise reveals no glaring overcharges,[8] the total amount claimed is quite high. As this court has held, "[i]n assessing the reasonableness of the hours billed, the difficulty and novelty of the issues involved are relevant considerations." *Burr, supra,* 748 F.Supp. at 101. Although it may have taken considerable effort to uncover Healey's duplicity, the issues in the case were relatively straightforward, and the discovery and trial were relatively simple. The period from the filing of the complaint to the completion of discovery was only eleven months. Plaintiff's discovery consisted of three depositions, with production of each witness's files. Defendants' discovery consisted of a single request for documents, a few interrogatories, and a deposition of the plaintiff. Except for the defendants' opposition to the issuance of letters rogatory to depose Wong, discovery proceeded without intervention by the court. At the trial, which lasted three days, the plaintiff presented one live witness and the defendants presented two. On this basis, the court finds that Dominick's claimed fees and expenses are excessive. Moreover, the time records suggest that there has been some duplication of efforts among Cadwalader attorneys.

While it is difficult to estimate the exact amount of inefficiency and duplication, "[c]ourts have recognized that a percentage deduction approach to compensate for duplication is ... acceptable...." *Burr, supra,* 748 F.Supp. at 101. Furthermore, the court has the discretionary power to award only that portion of the fees that is "thought reasonable to serve the sanctioning purposes" of Rule 11 and § 11(e). *Eastway, supra,* 821 F.2d at 123 (discussing Rule 11). After examining the billing sheets, the court finds that a 30% reduction will adequately correct for duplication, inefficiency, and unnecessary efforts, and will result in a more appropriate sanction against Healey and Press.

 Out of a concern for fairness and for the deterrent purposes of Rule 11 and § 11(e), the court will ordinarily allocate sanctions on the basis of fault for causing the violations. *See, e.g., Eastway, supra,* 637 F.Supp. at 569. Healey was at fault for the entire litigation, and so he should be responsible (either alone or jointly with Press) for the entire amount of the award. The point at which Press became responsible for the continuation of the litigation is not as clear. However, the court has found that the frivolousness of the litigation should have been clear to him by the conclusion of discovery. In any event, by the time the parties' joint proposed pretrial order was filed, Press had had time to review the discovery and to consider whether he should proceed to trial. Moreover, the signing and filing of the paper triggered the application of Rule 11, and put in concrete form the conduct triggering the application of § 11(e) and the court's inherent power to sanction. Accordingly, Healey will be solely liable for the fees incurred prior to the entry of the pretrial order on December 4, 1989, and Healey and Press will be jointly and severally liable for

---

7. This includes all matters after the filing of Dominick's answer on December 27, 1988, and before the conclusion of discovery on October 10, 1989, as well as earlier matters clearly attributable to discovery.

8. The billing sheets do reveal several trips back and forth between Toronto and New York for depositions and meetings. As the court is un-

aware of the specific circumstances surrounding the depositions and meetings, it is unprepared to find that the multiple trips were unnecessary. The fact that the travel by Wiener was billed for at Wiener's usual rate is compensated for by the general adjustment to Wiener's fees in the discovery phase.

the fees incurred thereafter. *See* Appendix III.

## III. CONCLUSION

In sum, Press's motion for enlargement of the record and reargument and Healey's motion for reargument are denied. As set out in Appendix III to this opinion, Domin- ick U.S. and Dominick Canada are jointly awarded $222,714.07 in expenses and attorneys' fees. Press and Healey are jointly and severally liable for $122,744.25 of this amount; Healey is liable for the entire amount.

IT IS SO ORDERED.

### APPENDIX I
#### TIME ATTRIBUTABLE TO OPPOSING THE WONG LETTERS ROGATORY

| Date | Attorney's description of service; attorney name | Time Spent | Amount Claimed |
|------|--------------------------------------------------|------------|----------------|
| 03/21/89 | T/c w/ Canadian counsel re [redacted] dep; review motion for letters rogatory (G.M. Petrick) | 0.50 | $ 97.50 |
| 03/24/89 | T/c w/ Pree re extension of time for opp. to motion for issuance of letters rogatory; draft stip. (GMP) | 0.50 | 97.50 |
| 03/27/89 | Reviewed documents; preliminary research on [redacted] (K.B. Larson) | 4.50 | 711.00 |
| 03/28/89 | Research re [redacted] (KBL) | 0.67 | 105.86 |
| 03/28/89 | Prepare opposition to plaintiff's motion for letters rogatory including review of Healey testimony (GMP) | 5.50 | 1,072.50 |
| 03/29/89 | Research re: [redacted]; discussed same with Greg Petrick; reviewed affidavit in opposition (KBL) | 3.50 | 553.00 |
| 03/30/89 | Finalize and serve opp. to motion letters rogatory; t/c Press, Heideman re Nuflo–Moya deposition (GMP) | 1.67 | 325.65 |
| 04/10/89 | Spoke to Greg Petrick, Richard Wiener re: response to letters rogatory; reviewed deposition testimony re: same. (KBL) | 1.17 | 190.71 |
| | Totals | 18.01 | $3,153.72 |

### APPENDIX II
#### TIME SPENT BY WIENER ON DISCOVERY MATTERS

| Date | Attorney's description of service | Time Spent | Amount Claimed | Amount Allowed |
|------|-----------------------------------|------------|----------------|----------------|
| 12/05/88 | Calls Press@ [sic] Rosen; conf. Petrick; review request for product@on [sic] | 0.67 | $ 177.55 | $ 100.50 |
| 12/09/88 | Conf. Petrick [re discovery]; corres. Press | 0.34 | 90.10 | 51.00 |
| 12/15/88 | Call Press; attn. request for production | 0.34 | 90.10 | 51.00 |
| 01/03/89 | Attn. re scheduling | 0.17 | 45.05 | 25.50 |
| 01/05/89 | Attn. re schedule | 0.17 | 45.05 | 25.50 |
| 01/09/89 | Calls Harrison, Press | 0.17 | 45.05 | 25.50 |
| 01/10/89 | Attn. re scheduling | 0.17 | 45.05 | 25.50 |
| 01/11/89 | Attn. re scheduling | 0.17 | 45.05 | 25.50 |
| 01/12/89 | Conf. calls Press, Heidman | 0.34 | 90.10 | 51.00 |
| 01/13/89 | Attn. re. scheduling | 0.17 | 45.05 | 25.50 |
| 01/16/89 | Call Press | 0.17 | 45.05 | 25.50 |
| 01/18/89 | Call from Harrison; calls Petrick | 0.17 | 45.05 | 25.50 |
| 01/19/89 | Calls Heidman, Press | 0.17 | 45.05 | 25.50 |
| 02/06/89 | Attn. re. corres. | 0.17 | 45.05 | 25.50 |
| 02/09/89 | Conf. Petrick; call Press; corres. Heideman | 0.34 | 90.10 | 51.00 |
| 02/10/89 | Attn. re. corres. | 0.17 | 45.05 | 25.50 |
| 02/21/89 | Attn. re. schedule | 0.17 | 45.05 | 25.50 |
| 02/22/89 | Attn. re. depositions | 0.17 | 45.05 | 25.50 |
| 02/23/89 | Prepare for depositions | 3.00 | 795.00 | 450.00 |
| 02/27/89 | Calls Press, [redacted] Harrison; prepare for depositions | 1.00 | 265.00 | 150.00 |
| 02/28/89 | Prepare for depositions including extended mtg. with [redacted] | 3.50 | 927.50 | 525.00 |

| Date | Attorney's description of service | Time Spent | Amount Claimed | Amount Allowed |
|------|----------------------------------|-----------|---------------|---------------|
| 03/01/89 | Prepare for and defend Field deposition | 8.50 | $2,252.50 | $1,275.00 |
| 03/02/89 | Prepare for and take Healy [sic] deposition | 8.00 | 2,120.00 | 1,200.00 |
| 03/07/89 | Call Harrison | 0.17 | 45.05 | 25.50 |
| 03/08/89 | Attn. re scheduling | 0.17 | 45.05 | 25.50 |
| 03/15/89 | Study Healey deposition transcript | 0.50 | 132.50 | 75.00 |
| 03/21/89 | Prepare for Healey deposition | 1.00 | 265.00 | 150.00 |
| 03/22/89 | Prepare for and take Healey deposition | 7.50 | 1,987.50 | 1,125.00 |
| 04/19/89 | Corres. Press | 0.17 | 45.05 | 25.50 |
| 04/28/89 | Attn. re Healey deposition | 0.17 | 45.05 | 25.50 |
| 05/01/89 | Prepare for Healey deposition | 1.00 | 265.00 | 150.00 |
| 05/02/89 | Prepare for and take Healey deposition | 3.84 | 1,017.60 | 576.00 |
| 05/10/89 | Attn. discovery issues | 0.17 | 45.05 | 25.50 |
| 05/15/89 | Attn. re scheduling | 0.17 | 45.05 | 25.50 |
| 05/23/89 | Attn. re scheduling; Wong letters rogatory | 0.17 | 45.05 | 25.50 |
| 05/25/89 | Call Press | 0.17 | 45.05 | 25.50 |
| 06/07/89 | Attn. document request | 0.17 | 45.05 | 25.50 |
| 06/12/89 | Attn. re corres. | 0.17 | 45.05 | 25.50 |
| 06/21/89 | Attn. re deposition | 0.17 | 45.05 | 25.50 |
| 06/23/89 | Cails [redacted] Harrison; attn. re depositions | 0.34 | 90.10 | 51.00 |
| 06/26/89 | Prepare [redacted] and Field deposition, including during travel NY to Toronto; mtg. with [redacted] in Toronto | 5.84 | 1,547.60 | 876.00 |
| 06/27/89 | Mtgs. in Toronto with [redacted]; prepare for and take Field deposition; travel Toronto to NY | 12.50 | 3,312.50 | 1,875.00 |
| 06/29/89 | Attn. re interrogatories | 0.17 | 45.05 | 25.50 |
| 06/30/89 | Attn. re. interrogatories; attn. re. Nuflo–Moya deposition | 0.34 | 90.10 | 51.00 |
| 07/04/89 | Prepare for Nuflo–Moya deposition, including during travel NY to Toronto | 5.50 | 1,457.50 | 825.00 |
| 07/05/89 | Mtg. [redacted]; prepare for and attend Nuflo–Moya deposition in Toronto; travel Toronto to NY | 12.00 | 3,180.00 | 1,800.00 |
| 07/10/89 | Attn. re. documents | 0.17 | 49.30 | 25.50 |
| 07/12/89 | Corres. Press; attn. re. scheduling | 0.17 | 49.30 | 25.50 |
| 07/18/89 | Attn. prep. for Nuflo–Moya deposition | 1.84 | 533.60 | 276.00 |
| 07/20/89 | Prepare for depositions; review documents | 2.17 | 629.30 | 325.50 |
| 07/24/89 | Prepare for deposition | 1.50 | 435.00 | 225.00 |
| 07/25/89 | Prepare for Nuflo–Moya deposition, including during travel New York to Toronto | 5.00 | 1,450.00 | 750.00 |
| 07/26/89 | Mtgs. [redacted]; prepare for and take Nuflo–Moya depos@tion [sic]; travel Toronto to New York | 12.00 | 3,480.00 | 1,800.00 |
| 07/27/89 | Prepare for deposition | 1.67 | 484.30 | 250.50 |
| 07/28/89 | Prepare for deposition | 2.50 | 725.00 | 375.00 |
| 07/31/89 | Prepare for and take Healey deposition; [redacted] | 7.17 | 2,079.30 | 1,075.50 |
| 08/01/89 | Call from [redacted]; review Nuflo–Moya transcript | 1.17 | 339.30 | 175.50 |
| 08/03/89 | Attn. discovery issues | 0.34 | 98.60 | 51.00 |
| 08/09/89 | Prepare for and attend mtg. with [redacted] in Toronto, including travel from NY | 6.84 | 1,983.60 | 1,026.00 |
| 08/10/89 | Prepare for and attend deposition in Toronto, including during travel Toronto to NY | 10.00 | 2,900.00 | 1,500.00 |
| | Totals | 133.18 | $36,606.20 | $19,977.00 |

Amount claimed: $36,606.20
Less amount allowed: 19,977.00

Reduction: $16,629.20

## APPENDIX III

### CALCULATION OF SANCTIONS

| | |
|---|---:|
| U.S. counsel fees claimed | $300,507.17 |
| Other expenses claimed | 42,713.35 |
| | |
| Total amount claimed | 343,220.52 |
| | |
| Reduction of Wiener's fees re discovery | $16,629.20 |
| Undocumented fees of Canadian counsel | 3,841.88 |
| Other fees attributable to opposing Wong deposition | 3,153.72 |
| Fees for services of Poppy Quattlebaum, Esq. | 1,432.76 |
| | |
| Total deductions | $25,057.56 |
| | |
| Amount claimed | $343,220.52 |
| Less: Deductions | 25,057.56 |
| | |
| Balance | $318,162.96 |
| Less: 30% reduction | 95,448.89 |
| | |
| Balance: Total amount of sanctions | $222,714.07 |
| | |
| Amount claimed after 12/4/89 (excl. P. Quattlebaum) | $175,348.93 |
| Less: 30% reduction | 52,604.68 |
| | |
| Balance: Total amount assessable against Press | $122,744.25 |