In re GENERAL PLASTICS CORP., Debtor.

CAPITAL FACTORS, INC., Plaintiff,

v.

HOMELINE CORPORATION, Arthur O. Knutson, and Hilda F. Knutson, Defendants,

and

General Plastics Corporation and First Union National Bank of Florida, Successor by Merger to Florida National Bank, Defendants and Counterplaintiffs.

Bankruptcy No. 91–12375–BKC–AJC. Adv. No. 91–0579–BKC–AJC–A.

United States Bankruptcy Court, S.D. Florida.

July 20, 1995.

Michael D. Ullman, Ullman & Ullman, North Miami Beach, FL, for plaintiff.

Paul D. Friedman, Friedman Rodriguez & Ferraro, D. Jean Ryan, Miami, FL, for defendants.

### MEMORANDUM OPINION REGARDING AMOUNT AND ALLOCATION OF FEES ALLOWED AS SANCTIONS AWARDED TO CAPITAL FACTORS

JACK B. SCHMETTERER, Bankruptcy Judge, Sitting by Assignment.

Following trial and judgment on liability, the principal parties settled. Plaintiff Capital Factors, Inc. ("Capital Factors") then prevailed in its Amended Motion to assess against Paul D. Friedman ("Friedman"), attorney for General Plastics Corporation ("General Plastics"), fees and expenses as sanctions under Fed.R.Bankr.P. 9011 by reason of his filing Counts V and VI of General Plastics' Counterclaim. Earlier opinions giving the relevant background are found at 158 B.R. 258 (1993); 170 B.R. 725 (1994); and Memorandum Opinion dated July 11, 1995, 184 B.R. 996 (1995). The parties briefed issues as to whether a monetary allowance was appropriate and, if so, how much. Based on Movant's supporting affidavits and briefs of the parties, this Opinion resolves these questions. The Appendix to this Opinion lists the categories of work for which fees are allowed as sanctions, the amounts requested, and the amounts found allowable for each task. Those amounts total $67,819.75. However, for reasons stated, the sanction allowed will be only $50,000.00.

### MOVANT'S ANALYSIS AND FEE REQUEST

#### I. Allocation of Fees Between Compensable and Non–Compensable Counts

An earlier order granted Capital Factor's motion for attorney's fees as to Counts V and VI, but denied the motion as to remaining counts of the Amended Counterclaim of General Plastics. That ruling raised the issue of fee allocation between compensable and non-compensable work by moving counsel.

 Where claims involve a "common core of facts" or are based on related legal theories, it has been said that:

> [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation....

*Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983).[1] However, where the claims for relief are based on different facts and legal theories, the hours spent on non-compensable claims should be excluded in considering the amount of a reasonable fee. *Id.*

In this case, Movant relies on *Hensley* and argues that the counterclaims of General Plastics arose out of two distinct "common cores" of fact: the pre-termination reduction in advance rate, proof of delivery requirement, tortious interference, and accounting claims (Counts I through IV); and the claims revolving around Capital Factors' failure to pay the purchase price after termination in March 1991 (Counts V through VII).

Because the claims arise out of two separate cores of fact, Capital Factors has excluded from its fee request (as required by *Hensley* ) time which may be attributed to the pre-termination claims. Thus, all time incurred prior to the service of the motion to amend the counterclaim in July 1992 has been excluded from Capital Factors' request. Time spent deposing witnesses who testified only about pre-termination claims has been excluded, as has time spent on interrogatories, production, and admissions pertaining to those claims.

Conversely, all time spent on post-termination claims is claimed, even though the Court has not allowed sanctions on Count VII, which alleged a breach of contract based on Capital Factors' failure to pay the purchase price after termination. Movant relies on *Hensley* and its progeny to seek recovery of fees for the time spent litigating all three counts arising from the same common nucleus of fact, even though one of these counts did not give rise to award of sanctions. *See* 461 U.S. at 435, 103 S.Ct. at 1940; *see also Goos v. National Ass'n of Realtors,* 997 F.2d 1565 (D.C.Cir.1993) (Williams, J., dissenting); *Trezevant v. City of Tampa,* 741 F.2d 336, 341 (11th Cir.1984); *Phillips v. Smalley Maintenance Servs., Inc.,* 711 F.2d 1524

(11th Cir.1983); *Church of Scientology of Cal. v. Cazares,* 638 F.2d 1272 (5th Cir.1981); *Sirgany Int'l of Orlando, Inc. v. Greater Orlando Aviation Auth.,* 1988 U.S.Dist. LEXIS 18423 (M.D.Fla.1988).

Movant concedes that in many instances the time spent on pre-termination and post-termination claims cannot be separated. Where the time cannot be allocated between unrelated compensable and non-compensable claims, the Eleventh Circuit has approved rough percentage reductions. In *Burger King Corp. v. Mason,* 710 F.2d 1480 (11th Cir.1983), the franchisor successfully defended 13 of 27 counterclaims based on factually unrelated terminations of distinct franchises. *Id.* at 1485. The Court of Appeals affirmed the district court's percentage allocation between compensable and non-compensable claims where it was unable to make a precise allocation because of the overlapping of issues. *Id.* at 1496–97. In *Jean v. Nelson,* 863 F.2d 759 (11th Cir.1988) (Kravitch, J., concurring in part and dissenting in part), time spent on a partially unrelated equal protection claim had to be eliminated from other compensable time. *Id.* at 771. Because the time overlapped, a rough allocation was approved. *Id.* at 772 (citation omitted); *see also Aetna Ins. Co. v. Meeker,* 953 F.2d 1328, 1334 (11th Cir.1992) (approving percentage reduction of fee to allocate time between sanctionable and non-sanctionable claims under Fed.R.Civ.P. 11); *Baker v. McDonald's Corp.,* 686 F.Supp. 1485 (S.D.Fla.1987), *aff'd* 865 F.2d 1272 (11th Cir.1988), *cert. denied sub nom. Hutchinson v. McDonald's Corp.,* 493 U.S. 812, 110 S.Ct. 57, 107 L.Ed.2d 25 (five of seven claims warranted Rule 11 sanctions; 5/7th of total fee awarded).[2]

Counsel for Capital Factors estimates that 50% of this unallocable time is attributable to the post-termination claims or to matters which overlap both claims. *See* Aff. of Michael W. Ullman.

---

**1.** The rationale of *Hensley,* where applicable, applies to defendants as well as plaintiffs.

**2.** As discussed below, another (and here more applicable) method used by some courts is to allow a party the amount of fees it would have incurred had the compensable claims been litigated by themselves. *See Schultz v. Hembree,* 975 F.2d 572, 577 (9th Cir.1992) (Carroll, J., dissenting in part); *Sirgany Inter.,* 1988 U.S.Dist. LEXIS 18423 at 12.

### Capital Factors' Allocation of Time

Capital Factors' has divided its requested fee hours into the following categories of tasks:

### 1. Pleadings and Motions Not Related to Discovery

The time spent pertaining to the motion to amend the counterclaim, Capital Factors' motion to dismiss the amended counterclaim, and Capital Factors' answer and affirmative defenses to the amendment to the counterclaim are said to be directly attributable to Counts V through VII, which were added by amendment in July 1992. App. 1a–1c. The motion to amend was heard and granted at the status conference of July 30, 1992, and time pertaining to attendance at that hearing is therefore requested. App. 1a. Capital Factors' motion to vacate on December 4, 1992, resulted from conflicting orders entered on its motion to dismiss and is therefore included in section 1b of the Appendix.

Capital Factors' motion for summary judgment sought summary judgment on all counts of the amended counterclaim. App. 1e. The time listed in the Appendix generally excludes time which was spent on issues not relating to Counts V through VII. But it contends that some time cannot be separated between compensable and non-compensable issues. Capital Factors estimates that 50% of this remaining time was either spent on post-termination issues or on overlapping issues. Although the Court lacked time to consider this summary judgment motion on the eve of trial, Capital Factors submitted this motion and the supporting memorandum of law as its trial brief.

Time and effort required to prepare and prosecute General Plastics' motion to strike certain exhibits and for sanctions has been claimed (App. 1e) since General Plastics sought sanctions for Capital Factors' failure to disclose Exhibit 75, which contained IRS notices of levy and correspondence pertaining to post-termination issues.

Both John Kiefer (Capital Factors' president) and Irwin Naitove (Capital Factors' expert witness) testified in part concerning post-termination issues, especially how clearance days affected General Plastics' right to payment of the purchase price. The time spent in defending General Plastics' motions to bar testimony of these witnesses has thus been claimed. App. 1f & 1g. Capital Factors asserts that it would have had to spend the same time defending these motions even if it had defended only against the post-termination claims, and all of this time is therefore requested.

### 2. Discovery

Questions 20 and 21 of Capital Factors' seventh set of interrogatories (App. 2a) dealt with priority of the claim of First Union National Bank of Florida ("First Union") to the fund held after termination, which was an important issue in the post-termination claims. The rest of the interrogatories asked for general information and the damages sought by General Plastics. Since these interrogatories dealt with post-termination issues or general information which would have been relevant if only the post-termination claims were litigated, all of these fees are claimed.

Out of the thirty-four questions in Capital Factors' eighth set of interrogatories (App. 2b), questions 17 through 22 involved the amount which General Plastics claimed was in its reserve after termination, and questions 23 through 25 dealt with who had the right to the funds on various dates after termination. One-third of this time is therefore claimed to be included in the fee.

The depositions of Jose Astigarraga (the First Union attorney who testified about First Union's claim to the fund after termination), First Union's representative Teresa Pacin, and Capital Bank officers Michael Levine and Edward Reilly pertained to the post-termination claims. App. 2c, 2i, & 2j. All fees for that work are claimed to be included in the amount awarded.

Depositions of the principals of Capital Factors (Scott MacMillan and John Kiefer) (App.2d & 2f) and of General Plastics (Robert Bumgarner and William Finn) (App. 2g & 2h) involved both pre-termination and post-termination issues, as well as general background information which overlapped both issues. Capital Factors estimates that 50% of this time should be allocated to the post-

termination claims and overlapping issues. The same rationale assertedly applies to the deposition of Capital Factors' expert, Irwin Naitove ("Naitove"), who testified about Capital Factors' compliance with industry standards in both pre-termination and post-termination matters. Fifty percent of this time is claimed. App. 2n.

General Plastics' second set of interrogatories sought general information on witnesses, especially regarding First Union, Capital Bank, and the IRS. Question 10 dealt with the IRS levy. The time spent answering these interrogatories is asserted to have pertained directly to post-termination or overlapping issues, and that time is claimed. App. 2e.

Capital Factors' tenth set of interrogatories all dealt with non-payment of the purchase price—a primarily post-termination claim. All of this time is therefore claimed. App. 2k.

General Plastics' fifth set of interrogatories sought to discover the basis for Capital Factors' affirmative defenses to Counts V, VI, and VII. All of this time is claimed. App. 2l.

Of General Plastics' ninth set of interrogatories, questions 6 and 14 pertain to invoices assigned after termination; questions 9 and 11 relate to the amount of the reserve and loan balance after termination; and question 10 involved conflicting claims to the fund after termination. The remaining interrogatories pertained to payment of the purchase price or to general information. App. 2m. Since these questions pertain to post-termination issues, all of this time is claimed.

### 3. Discovery-related motions

General Plastics filed several motions for enlargement of time to answer Capital Factors' eighth set of interrogatories, among other matters. Capital Factors opposed the last of these motions in its response of October 13, 1992. Since the eighth set of interrogatories involved post-termination claims, all of this time is claimed. App. 3a.

General Plastics' motion to exclude Michael Levine from the deposition of Capital Factors, and Capital Factors' related motion for sanctions, pertained to the deposition of Capital Factors' representative, Scott MacMillan. Time related to these matters is claimed. App. 3b.

Capital Factors' motion for protective order sought to prohibit General Plastics from taking Capital Factors' depositions until it had deposed General Plastics' witnesses (App. 3c). This involved witnesses who testified regarding post-termination claims. On a theory that this motion would have been made even if only the post-termination claims were litigated, all such time is claimed.

First Union also made a motion for a protective order. Since First Union's testimony related to the issue of its priority to and demands made against the fund held by Capital Factors after termination, all of this time is claimed. App. 3d.

### 4. Investigations

The only investigation time claimed is said to pertain solely to the post-termination issues. Other investigation time has been excluded.

### 5. Trial Preparation, Trial Attendance, and Post–Trial Matters

Time spent preparing for trial, attending trial, and drafting the proposed findings of fact and conclusions of law requested by the Court both before and after trial has not been separated between pre-termination and post-termination claims. App. 5. Capital Factors estimates that 50% of such time was spent on matters which either overlapped the two issues (such as testimony pertaining to background information and workings of the factoring relationship) or pertained directly to the post-termination claims.

Capital Factors seeks fees for attendance at trial of both its lead counsel, Michael W. Ullman ("Ullman"), and its second chair counsel, Richard A. Warren ("Warren").[3] It argues that in a complex case, fees of second chair counsel may be considered as part of reasonable fees, where that is otherwise ap-

---

**3.** Also present at trial was Kimberly K. Rangel. Reimbursement for her time, however, is not sought.

propriate. *Healey v. Chelsea Resources, Ltd.*, 133 F.R.D. 449, 458 (S.D.N.Y.1990), *rev'd in part and vac'd in part on other grounds*, 947 F.2d 611 (2d Cir.1991).

### 6. Motion for Sanctions

■ The time spent litigating a Rule 11 motion for sanctions should be considered in the award of a reasonable fee. *Pelletier v. Zweifel*, 921 F.2d 1465, 1522 (11th Cir.), *reh'g denied*, 931 F.2d 901, *cert. denied*, 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991); *Mike Ousley Prods., Inc. v. WJBF–TV*, 952 F.2d 380, 383–84 (11th Cir.1992).

> Given the perverse possibility that the imposition of Rule 11 sanctions will often give rise to satellite litigation, the need to deter frivolous litigation demands that this Court not only impose sanctions where Rule 11 is violated, but to also award attorneys' fees and costs in pursuing such sanctions.

*Gutierrez v. City of Hialeah*, 729 F.Supp. 1329, 1335 (S.D.Fla.1990) (citations omitted).

### II. *Factors Governing the Amount of a Reasonable Fee*

Bankruptcy Rule 9011 provides that an appropriate sanction "may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee." Fed. R.Bankr.P. 9011 (1995). This Court in its order granting Capital Factors' motion for sanctions has already determined that an award of fees is appropriate. The only question remaining is the amount that is "reasonable."

■ The amount of reasonable fee for purposes of Rule 11 is determined in two steps. First, the court applies the same objective method used in other fee award cases, the lodestar approach of *Hensley*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40. *See Sussman v. Salem, Saxon, and Nielsen, P.A.*, 152 F.R.D. 648 (M.D.Fla.1994); *Executive 100, Inc. v. Martin County*, 739 F.Supp. 1521 (S.D.Fla.1990).

■ However, Rule 11 does not necessarily entitle a party to the award of its entire reasonable fee. Compensation of the aggrieved party is one of two purposes behind the rule; the other is, through punishment, to deter attorneys from violating the rule. *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir.1987); *Aetna Ins. Co.*, 953 F.2d at 1334. Thus, a court may properly award less than a fee otherwise reasonable when it determines that the rule's goal of deterrence may be achieved by a lesser sanction. *Fox v. Acadia State Bank*, 937 F.2d 1566, 1571 (11th Cir.1991). Analysis of this deterrence issue is the second step in the analysis.

■ The lodestar method achieves an objective estimate of the value of a lawyer's services by multiplying the hours reasonably expended by a reasonable hourly rate. *See, e.g., Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1298 (11th Cir. 1988); *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.1994). The resulting product is presumed to be a reasonable fee. *O'Rear v. American Family Life Assur. Co.*, 144 F.R.D. 410, 414 (M.D.Fla.1992), (*citing Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984)).

■ The first step in the computation of the lodestar is to determine the reasonable hourly rate. *Loranger*, 10 F.3d at 781.

> A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation ... Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence.

*Norman*, 836 F.2d at 1299 (*citing Blum*, 465 U.S. at 895–96 n. 11, 104 S.Ct. at 1547 n. 11). While expert opinion as to rates is not necessary,[4] Capital Factors has submitted the reasonableness of rates charged by its attorneys in this case through an affidavit of Ullman concerning the rates charged to Capital Fac-

---

**4.** The Court need not require expert testimony since the review of thousands of fee applications each year does give a bankruptcy judge considerable experience on the question of reasonable and proper fees. The Court can determine a reasonable fee even without the aid of witnesses as to value. *Norman*, 836 F.2d at 1303.

tors in similar cases, and that of another attorney, Robert Roth, who has knowledge of rates charged by other attorneys of similar experience in this community in similar cases. *See Sussman,* 152 F.R.D. at 651 (expert affidavits should note that rates are those billed and paid in similar lawsuits). Friedman and his law firm have not challenged the asserted rates of $175.00 per hour for partners and senior associates and $125.00 to $150.00 per hour for junior associates as unreasonable. Their own rates are comparable. *See* Answers to Capital Factors' Interrogatories (App. 7). These rates are found to be quite reasonable and customary in the Miami area where this case was tried for a case of this complexity involving experienced counsel.

### III. *Analysis and Rulings*

**The Standard of Analysis Proposed by Capital Factors for Allocation of Fees Between Sanctionable and Non–Sanctionable Non–Sanctionable Counts is Not Applicable to Rule 9011 Proceedings**

■■■ The allocation of fees between sanctionable and non-sanctionable claims should be made on the basis of which fees would not have been incurred if Counts V and VI had not been brought. *See Sussman v. Salem, Saxon, & Nielsen, P.A.,* 150 F.R.D. 209, 216 (M.D.Fla.1993), *reconsideration denied,* 153 F.R.D. 689 (M.D.Fla.1994). Simply put, "work which benefited [non-sanctioned claims], irrelevant of which [claim] it was performed for, *should not be considered in any award of attorneys' fees and costs."* *Gutierrez,* 729 F.Supp. at 1335 (emphasis added). This is because "sanctions that are compensatory in nature must be causally related to the *additional fees* and costs which were *incurred* . . . as a result of the offending conduct." *Barnett Bank of Tampa v.*

*Muscatell (In re Muscatell),* 116 B.R. 295, 300 (Bankr.M.D.Fla.1990) (citation omitted) (emphasis added). In other words, "an appropriate [Rule 11] sanction would be the payment . . . of the attorneys' fees necessarily incurred . . . in excess of the attorney fees that would have been necessarily incurred if the complaint had contained only the [non-sanctioned] claims." *Gallagher v. Kopera,* 789 F.Supp. 277, 278 (N.D.Ill.1992) (Lindberg, J.).

While the Eleventh Circuit and other Florida courts have approved the proportionate allocation of attorneys' fees between sanctionable and non-sanctionable claims, *Burger King* and *Nelson,* heavily relied upon by Capital Factors, were not Rule 11 cases.[5] Friedman properly contends that seeking the award of even a proportionately equal share of the attorneys' fees by Capital Factors is not appropriate. Only those fees that would not have been incurred but for the filing of Counts V and VI should be considered in determining the reasonable attorneys' fees that may be awarded to Capital Factors.[6]

Capital Factors relies upon *Hensley,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40, for its contention that the attorneys' fees it expended in the instant matter be divided between "pre-termination" claims and "post-termination" claims (the conversion and civil theft claims and the breach of contract claim contained in count VII), because each set of claims is said to revolve around a common core of facts. All attorneys' time expended on its behalf with respect to all three post-termination claims is claimed.[7] Brief at 3. However, reliance on the *Hensley* analysis is misplaced.

■■■ That analysis was properly applicable to the recovery of fees under the federal civil rights statute at issue in *Hensley.*[8]

---

**5.** *Burger King Corp.,* 710 F.2d 1480 (Fla.Stat. ch. 57.105 (1994)); *Jean,* 863 F.2d at 762 (Equal Access to Justice Act).

**6.** Alternatively, even if this Court allocates fees on a proportionate basis, it should do so on the basis of sanctioned versus non-sanctioned claims rather than on the basis of pre-versus post-termination issues, as suggested by Capital Factors. *See McDonald's Corp.,* 686 F.Supp. 1485.

**7.** Thus, Capital Factors concedes that the fees it seeks to recover includes fees for time expended with respect to Count VII, "even though the court has not allowed fees on [that] count." Brief at 3.

**8.** In enacting the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, Congress authorized the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation. The purpose of § 1988 is to

However, it is not properly applied to determine fees awarded pursuant to Rule 9011 (nor to the allocation of fees between sanctionable and non-sanctionable conduct), because:

> the policy consideration behind fee awards to prevailing plaintiffs under civil rights statutes, however, are different from the policies underlying sanctions under Rule 11....

*Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 196 (3d Cir.1988). Thus, the analysis seeking award of all attorneys' fees it incurred on "post-termination" claims is misplaced.[9]

Accordingly, attorneys' fees are allowed here only for work performed as a result of the sanctioned Counts V and VI, not all fees claimed as relating to all three "post-termination" claims.

## IV. *Analysis of Attorneys' Fees Sought To Be Awarded*

■ Capital Factors claims sanctions of $122,198.80 for attorneys' fees it related to defense against General Plastics' claims for relief on Counts V and VI of its July 30, 1992, amendment to counterclaim. However, a large portion of the fees it seeks to recover were not incurred as a result of Counts V and VI, and thus are not allowed.[10]

### A. Trial Preparation, Trial and Post–Trial Matters; Duty to Mitigate

Over 40% of the attorneys' fees which Capital Factors seeks to have this Court award it as sanctions are those relating to trial. However, "[a] party defending against a frivolous paper has a duty under Rule 11 to mitigate its legal fees and expenses by resolving frivolous issues quickly and efficiently." *Dubisky v. Owens,* 849 F.2d 1034, 1037 (7th Cir.1988) (citations omitted). Such an obligation is implicit in Rule 11 and requires the defending party to "correlat[e] his response, in terms of hours and funds expended, to the merit of the claims." *Dubisky,* 849 F.2d at 1037 (*quoting INVST Fin. Group v. Chem–Nuclear Systems, Inc.,* 815 F.2d 391, 404 (6th Cir.1987), *cert. denied, Garratt v. INVST Fin. Group, Inc.,* 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987)); *Melrose v. Shearson/American Express, Inc.,* 898 F.2d 1209, 1216–17 (7th Cir.1990). The Tenth Circuit also addressed the duty to mitigate imposed upon a party seeking Rule 11 sanctions. *White v. General Motors Corp.,* 908 F.2d 675 (10th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). In *White,* the court noted that such party shall "mitigate costs by not overstaffing, overresearching or overdiscovering clearly meritless claims." *Id.* at 684. Rule 11's reasonableness requirement

---

ensure "effective access to the judicial process" for persons with civil rights grievances. H.R.Rep. No. 94–1558, p. 1 (1976), U.S. Code Cong. & Admin.News 1976, p. 5908; *Hensley,* 461 U.S. at 429, 103 S.Ct. at 1937. Moreover, *Hensley* specifically drew attention to the fact that:

> "[t]he provision for counsel fees in § 1988 was patterned upon the attorney's fees provisions contained in Title II and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a–3(b) and 2000e–5(k), and § 402 of the Voting Rights Act Amendments of 1975, 42 U.S.C. § 19731(e)." The legislative history of § 1988 indicates that Congress intended that "the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act." S.Rep. No. 94–1011, p. 4 (1976), U.S.Code Cong. & Admin.News 1976, p. 5912. The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a "prevailing party."

*Hensley,* 461 U.S. at 433, n. 7, 103 S.Ct. at 1939, n. 7 (emphasis added). Thus, the *Hensley* analysis applies to recovery of fees with respect to

statutes provided for fee shifting, not to rules providing for sanctions. In fact, *Hensley* began its analysis by drawing attention to *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), wherein:

> ... this Court reaffirmed the "American Rule" that each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary.

*Id.* 461 U.S. at 429, 103 S.Ct. at 1937.

9. Authorities cited by Capital Factors in support of utilizing the *Hensley* analysis relate to the award of fees pursuant to a fee-shifting statute. *See Goos,* 997 F.2d at 1567 (District of Columbia Human Rights Act); *Trezevant,* 741 F.2d at 341 (42 U.S.C. § 1988); *Smalley Maintenance Serv., Inc.,* 711 F.2d at 1530 (Title VII); *Church of Scientology of Cal.,* 638 F.2d at 1290 (42 U.S.C. § 1983). Capital Factors has cited no case applying *Hensley*'s rationale to a Rule 11 matter.

10. *See* Appendix to this Opinion for a summary of the rulings herein.

by its nature hinges on the particular facts and circumstances presented in a given case and looks not only to the hours and billing rate involved in responding to the other party's sanctionable conduct, but also to the appropriateness of the response taken. A party defending against a frivolous paper has a duty under Rule 11 to mitigate its legal fees and expenses by resolving frivolous issues quickly and efficiently. *Brown v. Federation of State Medical Bds.,* 830 F.2d [1429] at 1439 [ (7th Cir. 1987) ]; Schwarzer, *Sanctions Under The New Federal Rule 11–A Closer Look,* 104 F.R.D. 181, 202 (1985) ("obligation to mitigate is implicit" in the rule).

*Dubisky,* 849 F.2d at 1037. Thus, counsel "must mitigate damages by correlating his response, in terms of hours and funds expended, to the merit of the claims." *Id.* (*citing INVST Fin. Group, Inc.,* 815 F.2d at 404). In other words, "litigants should be strongly encouraged to use the least expensive alternative to alert the court and the offending party of a possible Rule 11 violation...." *Dubisky,* 849 F.2d at 1038. In fact, a court that is asked to impose Rule 9011 sanctions:

> ... must consider to what extent the defending party's injury [i.e., the attorney's fees incurred by Capital Factors] could have avoided or was self-inflicted. *Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 879 (5th Cir.1988) (*en banc*). This entails an examination of the promptness and method of bringing the frivolous conduct to the attention of both the court and the opposing party. *See* Fed.R.Civ.P. 11 advisory notes ("[a] party seeking sanctions should give notice to the court and the offending party promptly upon discovering a basis for doing so"). "If a baseless claim could have been readily disposed of by summary procedures, there is little justification for a claim for attorney's fees and expenses engendered in lengthy and elabo-

rate proceedings in opposition." *Thomas,* 836 F.2d at 879, n. 19 (*quoting Schwarzer,* 104 F.R.D. at 200–01).

*Dubisky,* 849 F.2d at 1037.

Friedman argues that Capital Factors failed to mitigate, and therefore its claims should be reduced accordingly. However, this contention lacks merit.

From the date General Plastics first sought to assert Counts V and VI, Capital Factors contended these claims were frivolous.[11] And it *did* seek to mitigate the effect of the claims. First, it moved to dismiss, but lost because the General Plastics' pleadings were adequate on their face to foreclose dismissal. Capital Factors also filed its motion for summary judgment on all counts on the eve of trial. At that time, it was determined that the case had progressed too far and was too close to the actual trial date to allow time for resolution of the issues by summary judgment. Indeed, the complexity of the entire case made summary judgment procedure as to the whole case impossible to consider quickly, and at that time the complex motion appeared unlikely of success. But that judicial appraisal was not due to any omission by Capital Factors or its counsel. The point is that Capital Factors tried its best to mitigate, and therefore the award will not be reduced due to any failure on its part to mitigate.[12]

However, the attorneys' fees Capital Factors seeks are those incurred in defense of all "post-termination" claims and include those related to its defense of a non-sanctioned claim, Count VII. Therefore, its claimed hours must be recalculated.

The allocation of fees between sanctionable and non-sanctionable claims must be made on the basis of which fees would not have been incurred if Counts V and VI had not been brought. Only those fees that would not otherwise have been incurred by Capital Factors may be awarded. *See Sussman,* 150 F.R.D. at 216; *Gutierrez,* 729 F.Supp. at

---

11. Capital Factors "gave notice to General Plastics and its counsel upon discovering the basis for sanctions in the letter dated July 16, 1992...." *See* Capital Factors' motion for attorneys' fees on Counts II, III, V, and VI of General Plastics' counterclaim at 2.

12. In fact, Capital Factors began preparation of its motion for summary judgment as early as August 30, 1992 (one month following General Plastics' filing of the amended counterclaim), yet could not complete and file that motion with supporting papers until seven months later because of the complexity of the case. *See* Capital Factors' Appendix, Section 1.d.

1335. Capital Factors did not specify particular attorney time related to the trial of this matter that meets this criteria, although, of course, part of the trial necessarily related to the two sanctioned counts.

Only part of the attorneys' fees it claims with respect to the trial of this matter will be allowed. Only $26,750.00 (the amount determined by dividing the attorneys' fees incurred equally among all claims tried) is the amount of "reasonable" attorneys' fees related to the sanctioned counts that Capital Factors expended at trial.[13]

### B. Pleadings and Motions Not Related to Discovery

#### 1. Capital Factors' Motion for Summary Judgment

Capital Factors also seeks to recover 50% of the 180.2 hours ($30,887.50) its counsel spent preparing the motion for summary judgment. In this regard, it does not segregate attorneys' fees sought with respect to Counts V and VI from those expended in seeking summary judgment as to the other five counts, other than to estimate that "50% of this remaining time was either spent on post-termination issues or on overlapping [i.e., pre-termination] issues." Brief at 6. The attorneys' fees it seeks consideration of pertained in some part to Count VII (the third "post-termination" claim) and the four "pre-termination" claims, all non-sanctioned counts.

Therefore, only $8,825.00 (the amount determined by dividing the attorneys' fees claimed equally among the seven claims as to which the motion was directed) comprises the "reasonable" attorneys' fees allowed.[14]

#### 2. Capital Factors' Motion to Dismiss Amended Counterclaim

Capital Factors next claims that 27.6 hours ($4,432.50) were expended in relation to its motion to dismiss the Amended Counterclaim.

However, a portion of this time is not related to that motion or to Counts V and VI. Capital Factors here seeks to recover 1.2 hours ($150.00) incurred in reviewing (on July 18, 1992) General Plastics' answers to interrogatories. However, those answers were to interrogatories propounded prior to the Court's decision to allow General Plastics' amended counterclaim and, thus, must relate to the "pre-termination" (i.e., non-sanctioned) claims. That time is not allowed.

Capital Factors also seeks 25.8 hours (all other time it seeks relating to this issue) for preparation of its motion to dismiss the amended counterclaim and its preparation for hearing on that motion. However, a significant portion of this time should be allocated to Capital Factors' attempt to dismiss Count VII. *See Dodd Ins. Servs., Inc. v. Royal Ins. Co. of America,* 935 F.2d 1152, 1159–60 (10th Cir.1991). Even if the attorneys' fees were to be allocated proportionately, only two-thirds (two sanctionable counts of three asserted in the amended counterclaim) of the 25.8 hours can be said to relate to Capital Factors' motion to dismiss Counts V and VI. *See Burger King Corp.,* 710 F.2d at 1480; *Jean,* 863 F.2d at 759; *Baker,* 686 F.Supp. at 1485; *see also* n. 4, *supra.* Thus, the amount sought is reduced by one-third (8.6 hours ($1,402.50)), and the total amount allowed for this category is 17.8 hours ($2,880.00).

#### 3. General Plastics' Motion to Amend Counterclaim To Add Counts V, VI, and VII

Among the attorneys' fees Capital Factors seeks to be awarded are 8.4 hours ($1,317.50)

---

13. This amount is determined by multiplying the total attorneys' fees Capital Factors claims it incurred at trial (and related activities)—$107,000—by the result of dividing the number of claims which this Court found "sanctionable" (Counts V and VI) by the number of claims litigated at trial (the interpleader and Counts I through VII of the amended counterclaim); $107,000 × ⅖ = 26,750. *See Burger King Corp.,* 710 F.2d 1480; *Jean,* 863 F.2d 759; *Baker,* 686 F.Supp. 1485; *see also* n. 4, *supra.*

14. This amount is determined by multiplying the total attorneys' fees incurred by Capital Factors in preparation of the motion for summary judgment by the result of dividing the number of claims which this Court found "sanctionable" (Counts V and VII) by the number of claims as to which summary judgment was sought (Counts I through VII); $30,887.50 × ²⁄₇ = $8,825. *See Burger King Corp.,* 710 F.2d at 1480; *Jean,* 863 F.2d at 759; *Baker,* 686 F.Supp. at 1485; *see also* n. 4, *supra.*

it claims were expended in relation to General Plastics' motion to amend counterclaim. However, the majority of this time is not related to that motion nor to Counts V and VI. Thus, these fees are not allowed. For example, on July 15, 1992, Capital Factors expended 0.4 hours ($50.00) described as "rev'd verified counterclaim;" Counts V and VI were not contained in the reviewed pleading. On July 30, 1992, 2.5 and 0.4 hours ($437.50 and $70.00, respectively) were spent on Capital Factors' motion to bifurcate. That motion addressed the original verified Counterclaim rather than the Amended Counterclaim containing the offending counts. On that same date, 2.5 hours $375.00) were expended on a court appearance dealing with three matters, two of which pre-dated the amended counterclaim and only the third being General Plastics' motion to amend. Thus, only one-third of this time can be said to relate to General Plastics' motion to amend. Moreover, as only two of the three claims asserted in the Amended Counterclaim were found sanctionable, only two-thirds of the one-third (or a total of 0.6 hours ($90.00)) should be allowed; the remainder, 1.9 hours ($285.00) should not. Between August 4 and August 11, 1994, 2.3 hours ($345.00) were expended in preparing an order which addressed several matters, including the motion to bifurcate, a status conference, and General Plastics' motion to amend. Thus, employing the same formula as for the hearing, only 0.5 hours ($75.00) should be considered; the remainder, 1.8 hours ($270.00) should not.

Once the amount sought by Capital Factors relating to General Plastics' motion to amend counterclaim is reduced by these items, $205.00 is allowed as relating to Counts V and VI.

#### 4. Capital Factors' Answer and Affirmative Defense

Capital Factors seeks 5.4 hours ($925.00) for preparation of its answer and affirmative defenses to the amended counterclaim. While the time spent in the preparation of its response to Count VII could exceed that spent on Counts V and VI, *see Dodd Ins. Servs.*, 935 F.2d 1152, at most, no more than two-thirds of the attorneys' fees claimed by Capital Factors can relate to preparation of the answer and affirmative defenses to the Amended Counterclaim (e.g., a reduction of the amount claimed of 1.8 hours ($308.00)). *See Burger King Corp.*, 710 F.2d at 1480; *Jean,* 863 F.2d at 759; *Baker,* 686 F.Supp. at 1485; *see also* n. 4, *supra.* Thus, the amount allowed for this category is 3.6 hours ($617.00).

#### 5. General Plastics' Motion for Sanctions Re: Exhibit 75

Capital Factors next requests that this Court consider 7.3 hours ($1,100.00) that its counsel used to address General Plastics' motion for sanctions against Capital Factors and to strike Exhibit 75. However, that motion was directed not only to Exhibit 75, but also to Exhibits 1, 2, 3, and 76 of Capital Factors' trial exhibits. Exhibits 1, 2, 3 (which three exhibits were dealt with as one item) and Exhibit 76 dealt solely with "pre-termination" issues. Only Exhibit 75 is claimed to relate to "post-termination" issues. *See* Brief at 7.

No more than one-third of the attorneys' fees claimed by Capital Factors can be said to relate to Exhibit 75. Moreover, because only two of three "post-termination" issues were deemed sanctionable, no more than two-thirds of that one-third can be allowed (i.e., a reduction of the amount sought by Capital Factors of 5.7 hours ($859.00)). *See Burger King Corp.*, 710 F.2d at 1480; *Jean,* 863 F.2d at 759; *Baker,* 686 F.Supp. at 1485; *see also* n. 4, *supra.* Thus, the amount allowed for this category is 1.6 hours ($241.00).

#### 6. General Plastics' Motion to Bar Kiefer As Expert Witness and Motion to Bar Naitove

Capital Factors also seeks 1.3 hours ($215.00) for addressing General Plastics' motion to bar Kiefer as an expert witness and 4.6 hours ($670.00) for addressing General Plastics' motion to bar to Naitove.

No more than two-thirds of the amount sought is allowed because only two of three "post-termination" issues were deemed sanctionable. · *See Burger King Corp.*, 710 F.2d at 1480; *Jean,* 863 F.2d at 759; *Baker,* 686 F.Supp. at 1485; *see also* n. 4, *supra.* Thus,

the amount allowed for this category is 3.1 hours ($393.00).

### C. Discovery, Investigations, and Related Motions

#### 1. Depositions of Jose Astigarraga, First Union, Michael Levine, and Edward Riley

Capital Factors next seeks consideration of attorneys' fees incurred in connection with the depositions of Jose Astigarraga, First Union, Michael Levine, and Edward Riley. Capital Factors seeks to recover all fees its counsel expended because these depositions "exclusively pertained to the post-termination claims." Brief at 8. However, the 13.8 hours ($2,227.50) sought with respect to the deposition of Jose Astigarraga are reduced by 3.10 hours ($387.50) because of attendance on February 16, 1993, of two attorneys at the deposition. The attendance of a second attorney at a deposition, while not improper, is not reasonable for the purpose of Rule 11. *See Healey,* 133 F.R.D. at 458–59.

These attorneys' fees (not inclusive of the time of the second attorney at the February 16, 1993, deposition) should be reduced by one-third to take into account that one of the three "post-termination" claims was not deemed sanctionable; thus, only 7.1 hours ($1,226.67) is allowed in connection with this deposition.

The 8.7 hours ($1,232.50) sought with respect to the deposition of First Union is are reduced to 3.3 hours ($412.50) for attendance on February 16, 1993, of two attorneys at the deposition. *See Healey,* 133 F.R.D. at 458–59. These attorneys' fees (not inclusive of the time of the second attorney at the February 16, 1993, deposition) are reduced again by one-third to take into account that one of the three "post-termination" claims was not deemed sanctionable. Thus, the amount allowed with respect to the deposition of First Union is 3.6 hours ($546.67).

Capital Factors also seeks consideration of 14.9 hours ($2,120.00) incurred with respect to depositions of Michael Levine and Edward Riley. Like the amounts sought with respect to depositions of Astigarraga and First Union, this amount is reduced by .8 hours ($100.00) due to participation of two attorneys on December 9, 1992, in a conference with the deponents. *See Healey,* 133 F.R.D. at 458–59. These attorneys' fees (not inclusive of the time of the second attorney) are reduced again by one-third to take into account the "post-termination" claim not deemed sanctionable. Thus, the amount of attorneys' fees allowed in connection with the depositions of Michael Levine and Edward Riley is 9.4 hours ($1,346.67).

#### 2. Interrogatories

Capital Factors also claims attorneys' fees with respect to various sets of interrogatories.[15] It claims 1.10 hours ($137.50) incurred with respect to its seventh set of interrogatories. However, it served these interrogatories on June 17, 1992, more than three weeks prior to General Plastics' service of its motion for leave to amend Counterclaim to plead Counts V and VI. Thus, Capital Factors cannot argue that it would not have incurred the attorneys' fees relating to these interrogatories but for General Plastics' filings of Counts V and VI. *See Sussman,* 150 F.R.D. at 216; *Gutierrez,* 729 F.Supp. at 1335; sec. II, *supra.* This amount is not allowed.

Capital Factors also seeks consideration of one-third of the attorneys' fees expended with respect to its eighth set of interrogatories, or 4.10 hours ($564.30). It asserts that eight questions (of thirty-four or almost 24%) related to "post-termination" issues. Thus, it claims entitlement to one-third of the time it expended. Brief at 8. However, as only 24% of the interrogatories relate to the "post-termination" issues, no more than that percentage of the attorneys' fees incurred should be considered. Moreover, that amount needs to be reduced further by one-third, given that only two of the three "post-termination" claims were deemed sanctionable. Thus, only two hours ($273.00) are allowed.

As to General Plastics' ninth set of interrogatories, Capital Factors seeks consider-

---

**15.** As to one set of interrogatories, Capital Factors' tenth, Capital Factors seeks .7 hours ($122.50). Because of the small dollar amount involved, Friedman did not contest this amount.

ation of 18.9 hours ($2,397.50). However, only four of the fourteen interrogatories (numbers 6, 9, 11, and 14) related to "post-termination" issues. Thus, Capital Factors can rightly claim entitlement to no more than 29% of the time it expended. Moreover, that amount needs to be reduced further by one-third as only two of the three "post-termination" claims were deemed sanctionable. Thus, only 3.6 hours ($457.00) are allowed.

Capital Factors also seeks consideration of 17.5 hours ($2,280.00) incurred with respect to General Plastics' fifth set of interrogatories. However, only seventeen of twenty-eight interrogatories (numbers 12 through 28) related to "post-termination" issues; thus, Capital Factors can claim entitlement to no more than 61% of the time it expended. Moreover, that amount needs to be reduced further by one-third as only two of the three "post-termination" claims were deemed sanctionable. Thus, only 7.1 hours ($923.00) are allowed.

Capital Factors also claims 2.10 hours ($262.00) incurred with respect to General Plastics' second set of interrogatories. However, these interrogatories were served in December 1991 (months before General Plastics' service of its motion for leave to amend counterclaim in July 1992). Thus, Capital Factors cannot claim that these attorneys' fees resulted from General Plastics' filings of Counts V and VI, and this amount is disallowed.

### 3. Discovery Related Motions

Among the attorneys' fees that Capital Factors seeks to have considered are those incurred with respect to (1) General Plastics' motions for enlargement of time (5.4 hours ($730.00)); (2) Capital Factors' emergency motion for protective order (2.2 hours ($287.50)); (3) General Plastics' motion to exclude Michael Levine from deposition of Capital Factors and for sanctions (11.5 hours ($1,715.00)); and (4) First Union's motion for protective order (5.2 hours ($655.00)).

General Plastics' motion for enlargement of time concerned more than just Capital Factors' eighth set of interrogatories. In fact, Capital Factors acknowledges that it also involved Capital Factors' eighth request for admission, Capital Factors' ninth request for production, and Capital Factors' responses thereto, none of which Capital Factors claims relate to "post-termination" matters. *See* Brief at 18. Thus, this motion dealt with more than just "post-termination" claims. These attorneys' fees are reduced by two-thirds, given that two of the three discovery matters addressed in the motions are not claimed to be "post-termination" matters. Moreover, the one-third to be considered is reduced by a further one-third, given that only two of the three "post-termination" claims were deemed sanctionable. Thus, the amount allowed is 1.2 hours ($162.00).

The attorneys' fees sought with respect to General Plastics' motion to exclude Michael Levine, include the attendance on January 6, 1993, of a second attorney at the hearing on that motion (3.5 hours ($437.50)). The time for the second attorney is disallowed. *See Healey,* 133 F.R.D. at 458–59. Moreover, these attorneys' fees (not including the attorneys' fees incurred by the second attorney attending the hearing) are further reduced by one-third as one of the three "post-termination" claims was not deemed sanctionable. Thus, only 5.3 hours ($852.00) is allowed.

The remaining two motions—Capital Factors' emergency motion for protective order and First Union's motion for protective order—seek attorney time that is reduced by one-third, again to take into account that one of the three "post-termination" claims was not deemed sanctionable. Thus, the amounts allowed with respect to these motions are 1.5 hours ($198.00) and 3.5 hours ($437.00), respectively.

### 4. Depositions of Scott MacMillan, John Kiefer Robert Bumgarner, William Finn, and Irwin Naitove

Capital Factors seeks consideration of 50% of the attorneys' fees incurred in connection with the depositions of Scott MacMillan, John Kiefer, Robert Bumgarner, William Finn, and Irwin Naitove (or 27.9 hours ($4,174.75), 4.75 hours ($736.25), 18.5 hours (2,980.00), 22.85 hours ($3,761.25), and 1.95 hours ($246.25), respectively) because these depositions "involved both pre-termination and post-termination issues." Brief at 8.

However, the fees sought with respect to the deposition of Scott MacMillan should not include the attendance of two or more attorneys at the meetings on August 12–13 and December 11, 1992, and on May 5, 1993, with MacMillan in preparation for his deposition, nor the January 20, 1993, time not related to his deposition.[16] *See Healey*, 133 F.R.D. at 458–59. Moreover, the attorneys' fees (not inclusive of those relating to the attendance of a second or third attorney at deposition) are further reduced by one-third to take into account that one of the three "post-termination" claims was not deemed sanctionable; thus, only 13.3 hours ($1,373.00) is allowed in connection with this deposition.

The attorneys' fees sought with respect to the deposition of John Kiefer also includes the attendance of a second attorney at the April 20, 1993, meeting with Kiefer in preparation for his deposition, and that time is likewise excluded.[17] *See Healey*, 133 F.R.D. at 458–59. Moreover, the attorneys' fees are further reduced by one-third as one of the three "post-termination" claims was not deemed sanctionable. Thus, only 2.5 hours ($380.00) is allowed in connection with this deposition.

The attorneys' fees sought with respect to depositions of Robert Bumgarner, William Finn, and Irwin Naitove are reduced by one-third as one of the three "post-termination" claims was not deemed sanctionable. Thus, only 12.4 hours ($1,987.00), 15.23 hours ($2,507.50), and 1.3 hours ($164.00), respectively, are allowed in connection with these depositions.

### 5. Investigations

Capital Factors also seeks consideration of 8.5 hours ($1,242.50) incurred in connection with investigations which it claims "pertain[ed] solely to the post-termination issues." Brief at 11. These attorneys' fees are reduced by one-third to take into account that one of the three "post-termination" claims was not deemed sanctionable. Thus, only 5.7 hours ($828.00) is allowed in connection with this category.

### D. Capital Factors' Motion for Sanctions

Capital Factors asks allowance of 96.77 hours ($16,717.25) incurred by its counsel in moving for sanctions. In this amount, Capital Factors again includes items not related to Counts V and VI. It seeks to recover 3.1 hours ($395.00) incurred on July 1 and 2. However, the motion to amend Counterclaim to add Counts V and VI was not filed until after July 10, 1992. Capital Factors also seeks to recover 2.1 hours ($367.50) for drafting the settlement agreement it entered into with General Plastics on March 31, 1994. Friedman should not be required to pay for this. Thus, neither of these two items are allowed.

Capital Factors also seeks consideration of 15.2 hours ($2,645.00) expended between August 26, 1993, and March 23, 1994, in preparing its motion for sanctions and reviewing the order thereon. However, that motion sought sanctions with regards to four of the claims asserted, and also sought an award of attorneys' fees under Fla.Stat. Ch. 772. Thus, the time Capital Factors seeks (not including that treated in the preceding paragraph) should be further reduced in proportion to the claims on which it prevailed, by 9.10 hours ($1,587.00)[18] to 14.3 hours ($14,367.75).

**16.** The time of the second (and, where applicable, third) attorney was 3.5 hours ($437.50) and 3.5 hours ($525.00) (both on August 12); 2 hours ($250.00) and 2 hours ($300.00) (both on August 13); 1.3 hours ($227.50) (on December 11); and 2.8 hours ($350.00) (on May 5). The time sought in time not related to MacMillan's deposition was .7 hours ($82.50). Because Capital Factors only included half of these amounts in the total amount it seeks to be awarded, the amount it seeks is reduced by half of these amounts (15.8 hours ($2,172.50) divided by 2, or 7.9 hours ($1,086.25)).

**17.** The time of the second attorney was 1.9 hours ($332.50). Because Capital Factors only included half of this amount in the total amount it seeks to be awarded, the amount it seeks is likewise reduced by half of this amount (1 hour ($166.25)).

**18.** This amount is determined by multiplying the total attorneys' fees incurred by Capital Factors in preparation of the motion and its review of the resulting order, by the result of dividing the number of claims on which Capital Factors prevailed (two) by the number of claims asserted by Capital Factors (five—the four Rule 11 claims

## V. The Sanctions To Be Imposed With Respect To Counts V and VI Ought To Be Only Minimum Necessary To Deter Future Abuses

The final question that must be considered in determining the amount of sanctions to be imposed under Rule 9011 is: What amount is the "minimum that will serve to adequately deter the undesirable behavior?" *White,* 908 F.2d at 684 (*citing Doering v. Union County Board of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988)); *see also Jackson v. O'Hara, Ruberg, Osborne & Taylor,* 875 F.2d 1224, 1230 (6th Cir.1989); *Stewart v. American Int'l Oil & Gas,* 845 F.2d 196, 202 (9th Cir.1988). The reference in the Rule to attorneys' fees does not create an entitlement to full compensation on the part of the opposing party every time a frivolous paper is filed. *Sussman,* 150 F.R.D. at 216. The sanctions awarded Capital Factors should therefore be limited to the amount deemed reasonably necessary to deter future undesirable behavior.[19]

This limitation on Rule 11 sanctions—the imposition of the minimum sanction reasonably necessary to deter—is a direct result of the main purpose underlying Rule 11, namely deterrence of attorney/litigant misconduct (not just compensation to the opposing party for its costs in defending a frivolous suit). *White,* 908 F.2d at 683. While Rule 11 sanctions are meant to serve several purposes, which may include punishing present litigation abuse and compensating victims of litigation abuse, "[d]eterrence is ... the primary goal of the sanctions." *Id.* (*citing Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 391, 110 S.Ct. 2447, 2453, 110 L.Ed.2d 359 (1990)); *see also Fox v. Acadia State Bank,* 937 F.2d

at 1571 ("deterrence remains the touchstone of the Rule 11 inquiry").

Friedman argues that this Court's Memorandum Opinion, in and of itself, is sufficient to accomplish the purpose underlying Rule 11—deterrence of future misconduct. However, he has never even conceded error in filing Counts V and VI, let alone sanctionable conduct. Mere disapproval is not sufficient here to deter his similar pleading in other cases. In recognition that the earlier opinion holds that a monetary ground should be imposed as sanctions, he suggests that the amount of $15,000.00 will accomplish such deterrence. However, that sum is disproportionate to the burden of $67,819.95 in additional fees that his insupportable pleadings cast upon Capital Factors. For fairness and compensation, as well as deterrence, the sanction must carry more weight.

Under all the circumstances, a sanction of $50,000.00 will be imposed both to deter similar conduct and to effect reasonable redress. Considering the size of fees earned by counsel herein, this amount will serve to educate without being destructive. Because officers of General Plastics were admittedly forthcoming to their counsel about the facts that made Counts V and VI meritless, that burden should fall only on its counsel. The principal parties have settled, and no sanction is still sought against General Plastics. However, had the participating parties not settled their differences, General Plastics would have received no sanction on this record.

Movant will propose a draft order in accord with this ruling within 14 days hereof.

and the claim for attorneys' fees pursuant to Fla.Stat. ch. 772)—$2,645 × ⅖ = $1,057.00.

**19.** Capital Factors concedes this principle, noting that "the court may properly award less than a reasonable fee, but only when it determines that [Rule 11]'s goal of deterrence may be

achieved by a lesser sanction." *Fox v. Acadia State Bank,* 937 F.2d at 1571. The Eleventh Circuit recognized in *Fox* that Rule 11 does not create an "entitlement to even reasonable attorney's fees if the Court determines that [Rule 11]'s central goal of deterrence may be achieved by a lesser sanction." *Id.*

## APPENDIX

| (1) | (2) Amount sought by Capital Factors | (3) Amounts Allowable |
|---|---|---|
| Trial | $ 53,500.00 | $26,750.00 |
| Motion to Dismiss Amended Counterclaim | $ 15,438.75 | $ 8,825.00 |
| Motion to Dismiss Amended Counterclaim | $ 4,432.50 | $ 2,880.00 |
| Motion to Amend Counterclaim | $ 1,317.50 | $ 205.00 |
| Capital Factors' Answer, Etc. | $ 925.00 | $ 617.00 |
| Motion for Sanctions re: Exhibit 75 | $ 1,100.00 | $ – 0.00– |
| Motions to Strike Kiefer and Naitove | $ 885.00 | $ 393.00 |
| Depositions of Astigarraga, etc. | $ 5,580.00 | $ 3,120.00 |
| Interrogatories | $ 5,763.30 | $ 1,775.50 |
| Discovery Related Motions | $ 3,397.50 | $ 1,649.00 |
| Depositions of MacMillan | $ 11,899.50 | $ 6,409.50 |
| Investigations | $ 1,242.50 | $ 828.00 |
| Motions for Sanctions | $ 16,717.25 | $14,367.75 |
| **TOTALS** | $122,198.80 | $67,819.75 |